# J. RIBAS y HIJO *v.* UNITED STATES.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF PORTO RICO.

No. 151. Submitted April 28, 1904.—Decided May 16, 1904.

Under § 35 of the act of April 12, 1900, this court can review on writ of error a final judgment of the District Court of the United States for Porto Rico, where the amount in dispute exceeds $5,000, and a final judgment in a like case in the Supreme Court of one of the Territories of the United States could be reviewed by this court.

An action which could be brought under the Tucker Act against the United States in either a District or a Circuit Court of the United States is within the cognizance of the District Court of the United States of Porto Rico. *Quære,* and not decided, whether a foreign corporation can maintain any

action under the Tucker Act in any court in view of the provisions of the act that the petition must be filed in the District where the plaintiff resides.

The seizure and detention by the military and naval forces of the United States during the war with Spain, of a vessel owned by Spanish subjects, was a seizure of enemy's property and an act of war within the limits of military operations, although the owners were not directly connected with military operations, and a claim for damages for such seizure and detention is not founded on the Constitution of the United States, or on any act of Congress, or regulation of an Executive Department, or on any contract express or implied, and an action based thereon is not sanctioned by the Tucker Act and cannot be maintained thereunder.

The fact that the vessel was retained pending negotiations for a treaty of peace and during a cessation of hostilities does not connect the original seizure with an implied contract to compensate the owners for the detention of the vessel.

If the owners had any claim against the United States it was relinquished by the stipulation in the treaty of peace relinquishing claims, such stipulation covering all claims arising prior to the exchange of ratifications of the treaty.

In case of a conflict between a statute and treaty the one last in date prevails.

THIS action was brought against the United States by J. Ribas y Hijo, a Spanish corporation, to recover the sum of ten thousand dollars as the value of the use of a certain merchant vessel taken by the United States in the Port of Ponce, Porto Rico, when that city was captured by the United States Army and Navy on July 28, 1898.

The vessel was kept and used by the Quartermaster's Department of the Army until some time in April, 1899, when the War Department ordered its return to the owner, if all claim for use or damage for detention should be waived. Such conditional return was refused by the captain who claimed to be a part owner and with his crew he left the vessel.

Subsequently the consignees of the vessel were notified that it was at their disposal; that the Government was about to discharge those having it in care; and they were requested to put some one in control of it. This they declined to do, and the vessel was abandoned and in August, 1899, was wrecked in a hurricane.

The vessel was never in naval custody nor condemned as

prize.  When seized it was a Spanish vessel, carried the Spanish flag, and its owner, captain and crew were all Spanish subjects.  It did not come within any of the declared exemptions from seizure set forth in the Proclamation of the President of April 26, 1898.  30 Stat. 1770.  A claim filed in the War Department in February, 1900, for its use was rejected.

Such being the facts found, the court below, upon final hearing, dismissed the action upon the general ground that the vessel was properly seized as enemy's property, and its use was by the war power for war purposes.

A rehearing was asked and was denied, the court saying: "A rehearing is asked upon the ground that the court has found as a matter of fact that the use continued until in April 1899, and, as the protocol, followed by the President's proclamation, was dated August 12, 1898, the complainants should recover on a *quantum meruit* the value of the use of the vessel between those dates.  This was a seizure in time of war, and not in time of peace.  It was, as has been said, a special case arising from the necessary operation of war, and the war power of the Government concluded it was necessary to take and use the property.  Even conceding that the seizure did not terminate all right of the Spanish owner in the property, or to any use of it, yet the protocol and proclamation did not end the war.  The protocol worked a mere truce.  The President had not the power to terminate the war by treaty without the advice or consent of the Senate of the United States.  If a treaty be silent as to when it is to become effective, the weight of authority is that it does not become so until ratified, and this was not done until in April, 1899, and the war did not end by treaty until then, and all the use made by the Government of the vessel was justified by the rules of law and international law without compensation."

*Mr. Charles M. Boerman* for appellant:

It is an undisputed rule of modern international law, European and American alike, that the private property

of the citizens of an invaded territory of the enemy cannot be taken without compensation. Halleck's Int. Law, vol. II, ch. XXI, § 12; Bluntschli's Codified Int. Law, introduction, and § 655; Theo. D. Woolsey's Introduction to Int. Law, § 130; Freeman Snow, Int. Law, § 51; *Mrs. Alexander's Cotton,* 2 Wall. 404; General Order, No. 100, § 38; Lawrence's Int. Law, § 66; Dana's Wheaton, § 16; Glenn's Int. Law, appendix; General Order, 101, July 13, 1898.

In view of definite instructions to the United States armies not to seize private property without compensation there can be no doubt that in the seizure and use of appellant's vessel there was implied a contract in fact that the United States would pay a just compensation for the use of the vessel. See also Lawrence's Wheaton, Part 4, ch. II, § 7; Taylor's Int. Law, §§ 536, 538; Fiore, Public Int. Law, § 1506 (Italian); Frederic II, Oeuvres, vol. 28, p. 91; Bluntschli, Moderne Kriege (German), §§ 152, 157.

The only exception to the foregoing rule is that an army during a war may take or destroy property of private citizens in case of immediate necessity for or on the field of battle, encampment or marches or for battle or siege.

A protocol containing the preliminaries of peace and a stipulation of cessation of hostilities puts an end to the right of confiscation even for so-called necessities of war. Bluntschli, § 705; Woolsey, § 150.

*Mr. Assistant Attorney General McReynolds* for the United States:

The trial court had no jurisdiction.

The plaintiff did not reside in the District of Porto Rico. Such residence was necessary under section 5 of the Tucker Act to give the trial court jurisdiction.

Plaintiff's claim is not such as would entitle it to redress in a court of law, equity or admiralty.

There was no contract, either express or implied, between the United States and the plaintiff. Any possible action would sound in tort. *Gorch* v. *United States,* 15 C. Cl. 281, 287.

· The vessel was rightly treated as property of a subject of the enemy upon the high seas and the seizure was justifiable. It was taken for government use. Section 4624, Rev. Stat., and arts. 46–50, Am. Naval Code, render action by a prize court in such cases unnecessary, nor is such adjudication to vest title in the captors required by international law, and the return of the vessel before condemnation ought not to be complained of. If the vessel had been destroyed its owner certainly could not have recovered its value. *The. Manila Prize Cases,* 188 U. S. 254; *United States* v. *Ross,* 1 Gall. 624; Hall's Int. Law, §§ 143, 148, 150; Halleck, Int. Law, p. 758, § 13; Dana's Wheaton, § 388, note; Wharton, Int. L. Dig. § 328; *Jecker* v. *Montgomery,* 18 How. 110, 123; *The Siren,* 13 Wall. 389, 394.

If the seizure was upon land, it was justifiable upon the ground of military necessity.

The general rule is that private property on land may be taken when it is directly useful for military purposes. It should not be seized for the mere sake of gain or to increase the wealth of the country. *Mrs. Alexander's Cotton,* 2 Wall. 404, 419; *Taylor* v. *Nashville &c. R. R. Co.,* 6 Coldw. (Tenn.) 646; *S. C.,* 98 Am. Dec. 474; *Oakes* v. *United States,* 174 U. S. 778, 786; *Cook* v. *Howard,* 13 Johns. (N. Y.) 275, 282.

Gen. Orders, No. 101, quoted by counsel for appellant, has no application to the present case. It was made for the government of the military authorities in Cuba. Rept. of War Dept., 1898, vol. 1, pt. 1, p. 125.

The military authorities in Porto Rico were acting under General Orders, No. 100. See § 37.

Any possible claim was relinquished by Art. VII of the Treaty of Peace.

The first part of this section fairly states the rule of international law which would control had no such express stipulation been made. Halleck's Int. Law, p. 851; Baker's Int. Law, p. 113; *Ware* v. *Hylton,* 3 Dall. 189, 229; *Gray, Admr.,* v.

*United States*, 21 C. Cl. 340, 392; *United States* v. *Mining Co.*, 29 C. Cl. 432, 512.

By the protocol there was a mere suspension of hostilities (Art. VI). It was only a step in the effort to arrive at an agreement for peace. In effect, it was a truce. The object being temporary, everything in the end should be in the same position as at the beginning. The meaning of every such compact is that all things should remain as they were at the moment of its consummation. 1 Kent's Comm. 159, 161; Vattel, b. 3, ch. 16, §§ 233–238; Taylor's Int. Law, § 513.

This vessel was taken before the truce was declared. Its retention during the existence of the truce was entirely proper. The Government by thus retaining it incurred no new obligation, and as no liability existed prior thereto plaintiff's claim is without merit.

MR. JUSTICE HARLAN, after making the foregoing statement, delivered the opinion of the court.

1. By the 35th section of the act of Congress of April 12, 1900, c. 191, temporarily providing revenues and civil government for Porto Rico, it was declared that "writs of error and appeals from the final decisions of the Supreme Court of Porto Rico and the District Court of the United States shall be allowed and may be taken to the Supreme Court of the United States in the same manner and under the same regulations and in the same cases as from the Supreme Courts of the Territories of the United States; and such writs of error and appeals shall be allowed in all cases where the Constitution of the United States, or a treaty thereof, or an act of Congress is brought in question and the right claimed thereunder is denied; . . ." As the value of the matter here in dispute exceeds the sum of five thousand dollars, and as the final judgment, in a like case in the Supreme Court of one of the Territories of the United States, could be reëxamined here, we have jurisdiction of the present appeal from the Dis-

trict Court of the United States for Porto Rico. 23 Stat. 443, c. 355; 31 Stat. 85, c. 191, §§ 34, 35; *Royal Insurance Co.* v. *Martin,* 192 U. S. 149.

2. This action, we have seen, was brought to recover the value of the use of a vessel belonging to Spanish subjects and taken by our Army and Navy during the war with Spain, and used by the Quartermaster's Department of the Army.

By the above act of April 12, 1900, the court below was given, "in addition to the ordinary jurisdiction of District Courts of the United States, jurisdiction of all cases cognizant in the Circuit Courts of the United States, and shall proceed in the same manner as a Circuit Court." 31 Stat. 85, c. 191, § 34. If, therefore, this action could have been brought in a Circuit Court of the United States, it was within the cognizance of the court below. We must, then, look to the act of March 3, 1887, commonly known as the Tucker Act, and which provides for the bringing of suits against the Government of the United States. 24 Stat. 505, c. 359.

By the first section of that act it is provided that the Court of Claims shall have jurisdiction to hear and determine "all claims founded upon the Constitution of the United States or any law of Congress, except for pensions, or upon any regulation of an Executive Department, or upon any contract, expressed or implied, with the Government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States either in a court of law, equity or admiralty if the United States were suable. . . ." The second section provides that "the District Courts of the United States shall have concurrent jurisdiction with the Court of Claims as to all matters named in the preceding section where the amount of the claim does not exceed one thousand dollars, and the Circuit Courts of the United States shall have such concurrent jurisdiction in all cases where the amount of such claim exceeds one thousand dollars and does not exceed ten thousand dollars." The fifth

section is in these words: "That the plaintiff in any suit brought under the provisions of the second section of this act shall file a petition, duly verified with the clerk of the respective court having jurisdiction of the case, and in the district where the plaintiff resides. Such petition shall set forth the full name and residence of the plaintiff, the nature of his claim, and a succinct statement of the facts upon which the claim is based, the money or any other thing claimed, or the damages sought to be recovered and praying the court for a judgment or decree upon the facts and law."

The Government insists that the requirement in that act, that the petition shall be filed "in the district where the plaintiff resides," precludes a suit against the United States by any person, natural or corporate, residing out of the country. We express no opinion upon that question, as there are other grounds upon which we may satisfactorily rest our decision.

The present suit finds no sanction in the above act even if the plaintiff were not a foreign corporation. Its claim is not founded on the Constitution of the United States, or on any act of Congress, or on any regulation of an Executive Department. Nor can it be said to be founded on contract, express or implied. There is no element of contract in the case; for nothing was done by the United States, nor anything said by any of its officers, from which could be implied an agreement or obligation to pay for the use of the plaintiff's vessel. According to the established principles of public law, the owners of the vessel, being Spanish subjects, were to be deemed enemies, although not directly connected with military operations. The vessel was therefore to be deemed enemy's property. It was seized as property of that kind, for purposes of war, and not for any purposes of gain. The case does not come within the principle announced in *United States* v. *Great Falls Mfg. Co.*, 112 U. S. 645, 656, where this court said that "the United States, having by its agents, proceeding under the authority of an act of Congress, taken the property of claimant for public use, are under an obligation, imposed

by the Constitution, to make compensation. The law will imply a promise to make the required compensation where property, to which the Government asserts no title, is taken pursuant to an act of Congress as private property to be applied for public uses. "Such an implication being consistent with the constitutional duty of the Government, as well as with common justice, the claimant's cause of action is one that arises out of implied contract within the meaning of the statute which confers jurisdiction upon the Court of Claims of actions founded 'upon any contract, express or implied, with the Government of the United States.'" The seizure, which occurred while the war was flagrant, was an act of war occurring within the limits of military operations. The action, in its essence, is for the recovery of damages, but as the case is one sounding in tort, no suit for damages can be maintained under the statute against the United States. It is none the less a case sounding in tort because the claim is in form for the use of the vessel after actual hostilities were suspended by the protocol of August 12, 1898. A state of war did not in law cease until the ratification in April, 1899, of the treaty of peace. "A truce or suspension of armies," says Kent, "does not terminate the war, but it is one of the *commercia belli* which suspends its operations. . . . At the expiration of the truce, hostilities may recommence without any fresh declaration of war." 1 Kent, 159, 161. If the original seizure made a case sounding in tort, as it undoubtedly did, the transaction was not converted into one of implied contract because of the retention and use of the vessel pending negotiations for a treaty of peace. Besides, the treaty of peace between the two countries provided that "the United States and Spain mutually relinquish all claims for indemnity, national and individual, of every kind, of either Government, or of its citizens or subjects, against the other Government, that may have arisen since the beginning of the late insurrection in Cuba and prior to the exchange of ratifications of the present treaty, including all claims for indemnity for the cost of the war. The United

States will adjudicate and settle the claims of its citizens against Spain relinquished in this article." This stipulation clearly embraces the claim of the plaintiff—its claim against the United States for indemnity having arisen prior to the exchange of ratifications of the treaty of peace with Spain.

We may add that even if the act of March, 1887, standing alone, could be construed as authorizing a suit of this kind, the plaintiff must fail; for, it is well settled that in case of a conflict between an act of Congress and a treaty—each being equally the supreme law of the land—the one last in date must prevail in the courts. *The Cherokee Tobacco*, 11 Wall. 616, 621; *Whitney* v. *Robertson*, 124 U. S. 190, 194; *United States* v. *Lee Yen Tai*, 185 U. S. 213, 221.

It results that the judgment below dismissing the action must be affirmed.

*It is so ordered.*