AtkiNsoN, Judge,
delivered the opinion of the court:
Claimants instituted this suit February 7, 1905, to recover from the United States $113,083.68, which the findings show was paid by them as import dues on merchandise shipped from the island of Porto Rico into the port of the city of New York on various dates between December 10,1898, when the treaty of peace between Spain and the United States was signed, and April 11, 1899, the date on which the ratifications of said treaty were exchanged by said Governments.
No question of fact is involved, it being conceded that the duties were paid in the manner fully set forth in Finding YII after protest in writing had been by claimants formally made to the collector of customs at the port of New York. The only question, therefore, is one of law — namely, Was the island of Porto Rico, at the dates of the arrival of claimants’ vessels at the port of New York, a foreign country within the meaning of the tariff laws of the United States then in force?
It is contended by plaintiff’s counsel that all of the tariff duties were paid to the collector of the port of New York after the ratification of the treaty with Spain by the United States, and four out of the seven items were paid to the collector after the ratification of the treaty by the Spanish Cortes; and inasmuch as Spain had ceded the island of Porto Rico to the United States under Articles I, II, III, and VIII of the treaty and had withdrawn all her forces from said island; had relinquished her possession and authority thereto; had delivered all the public property on said island to the United States; and necessarily, prior to December 10, 1898, had complete possession of said island, it therefore should not longer be regarded as “foreign territory,” and the levying of tariff duties on its products *390 shipped into the United States was not justifiable and should be refunded.
On the other hand, the defendants contend that Porto Rico did not in law become a province of the United States until on and after the treaty had been duly signed by both parties thereto and the ratifications of the same had been exchanged, which final action was taken on April 11, 1899, and on that date, and not before, it ceased to be “ foreign territory.” Necessarily, therefore, it became the duty of the Customs Department of the United States Government to levy and collect from the'claimants tariff duties within the meaning of the existing revenue laws upon all articles shipped from Porto Rico prior to the ratifications and exchange of said treaty.
Even if this particular feature of the case had not previously been passed upon by the Supreme Court, we would regard the above contention as logical, because Articles I, II, III, and VIII of the treaty are no more than a proviso to cede Porto Rico to the United States in the event a treaty of peace should be concluded and ratified. The treaty suspended hostilities and did not terminate them. Had it failed of ratification the suspension of hostilities would have terminated and war would have been resumed. Consequently Porto Rico could not be regarded as actually belonging to and being a part of the United States until after the ratification of the treaty on April 11, 1899, a period subsequent to the importations of the merchandise on which duties were paid by the claimants herein and to recover which this suit was instituted.
We accordingly decide that the right to exact duty upon merchandise imported from the island of Porto Rico to and into the United States prior to April 11, 1899, the date of the ratification and promulgation of the treaty between the United States and Spain, was within the meaning and intent of the tariff law of the United States; and it follows that claimants’ petition must be dismissed and judgment rendered for the United States, which is accordingly ordered. Dooley v. United States, 182 U. S., 222; Armstrong v. United States, ibid., 243; McLeod v. United States, 229 U. S., 416, 432; Hijo v. United States, 194 U. S., 315.