HEYMANN PRODUCTS CO. ET AL. v. UNITED STATES

United States Customs Court, First Division

(Decided October 24, 1938)

*Strauss & Hedges* for the plaintiffs.

*Charles D. Lawrence*, Acting Assistant Attorney General (*Charles J. Miville* and *Daniel G. McGrath*, special attorneys), for the defendant.

Before McCLELLAND, SULLIVAN, and BROWN, Judges; BROWN, J., concurring

SULLIVAN, Judge: In these cases testimony was not introduced. They were submitted on the briefs of the respective parties. The question involved is entirely one of law.

Various merchandise is involved imported from Japan and Austria, a portion thereof being fly ribbons on which allowance was made under a trade agreement. They were assessed at 27½ per centum ad valorem under paragraph 1413, Tariff Act of 1930, by virtue of a trade agreement with Belgo-Luxemburg Economic Union published in T. D. 47600. Plaintiffs have abandoned the protests as to such merchandise. There are also assessments at three-fourths of one cent per pound and 3 cents per pound under section 601 of the Revenue Act of 1932. As to such assessments the protestants do not make any claims.

The rates of duty taken under paragraphs under which assessments have been made are as follows:

### Merchandise from Austria

| Rate | Paragraph |
|---|---|
| 70% | 1513 |
| 25% | 1537 |

### Merchandise from Japan

| Rate | Paragraph | Rate | Paragraph |
|---|---|---|---|
| 60% | 31 | 30% | 1503 |
| 70% | 212 | 40% | 1506 |
| 15% & 20¢ | 225 | 50% & 2¢ | 1506 |
| 50% | 230 | 50% & 1¢ | 1506 |
| 4½¢ | 331 | 50% | 1512 |
| 40% | 339 | 70% | 1513 |
| 50% | 339 | 60% | 1518 |
| 60% | 342 | 25% | 1537 |
| 45% | 397 | 25% & 1¢ | 1537 |
| 33⅓% | 412 | 40% | 1541 |
| 50% | 916 (b) | 45% & 8¢ | 1542 |
| 35% | 1413 | 40% | 1554 |

The foregoing assessments were made under the Tariff Act of 1930, as amended on June 12, 1934, by the insertion of section 350 (see T. D. 47117). The merchandise covered by these protests was imported subsequently to the promulgation of section 350 and the proclamation of the trade agreement with Cuba on August 24, 1934, as published in T. D. 47232, 66 Treas. Dec. 189; or between June 1935, and June 1936.

It is claimed the merchandise at bar is entitled to a 20 per centum reduction in duties in accordance with the allowance made by said trade agreement with Cuba, by virtue of the last paragraph of article III of said trade agreement. This article reads as follows:

Every article the growth, produce, or manufacture of the Republic of Cuba which is not provided for in Article I, and which is not enumerated and described in Schedule II annexed to this Agreement, shall, on importation into the United States of America, be granted an exclusive and preferential reduction in duty

of not less than 20 per centum, such percentage of reduction being applied to the lowest rate of duty now or hereafter payable on the like article the growth, produce, or manufacture of any other foreign country.

Plaintiffs state in their brief "None of the articles in question are covered by schedule II of said trade agreement."

The substance of plaintiffs' claim, as stated in their brief, is that "Congress adopted the policy of generalizing to all countries any concessions granted to one country" by reason of the following provision in said section 350 (a):

The *proclaimed* duties and other import restrictions shall apply to articles the growth, produce, or manufacture of all foreign countries, whether imported directly, or indirectly. [Italics ours.]

It seems that the rates of duties involved in these protests are the rates of duties specified by the Tariff Act of 1930, and not "proclaimed duties" or "modifications of existing duties" which the President was authorized to proclaim, "as are required or appropriate to carry out any foreign-trade agreement that the President has entered into hereunder."

Counsel for plaintiffs calls attention to a Treaty of Commerce and Navigation with Japan concluded in 1894 and proclaimed March 21, 1895, and quotes article IV thereof. A subsequent treaty, however, was entered into between the United States and Japan, superseding the treaty of 1894–1895, and proclaimed April 5, 1911 (see 37 Stat. at Large, part 2, page 1504). It would appear from the following that the treaty of 1894 was superseded by the later treaty:

### Article XVI

The present Treaty shall, from the date on which it enters into operation, supersede the Treaty of Commerce and Navigation dated the 22nd day of November, 1894; and from the same date the last-named Treaty shall cease to be binding.

There are provisions as to duties on imported merchandise in this treaty as follows:

### Article V

The import duties on articles, the produce or manufacture of the territories of one of the High Contracting Parties, upon importation into the territories of the other, shall henceforth be regulated either by treaty between the two countries or by the internal legislation of each.

Neither Contracting Party shall impose any other or higher duties or charges on the exportation of any article to the territories of the other than are or may be payable on the exportation of the like article to any other foreign country.

    \*       \*       \*       \*       \*       \*       \*

There does not appear to be any treaty directly between Japan and the United States regulating the import duties on the produce or manufacture of either country, nor has there been any *special* "internal legislation" with reference thereto in the United States.

Plaintiffs, however, have called our attention to the "Protocol of provisional tariff arrangement between the United States and Japan" proclaimed April 5, 1911 (37 Stat. at Large, part 2, p. 1510), wherein the following appears:

Pending the conclusion of a treaty relating to tariff, the provisions relating to tariff in the Treaty of the 22nd of November, 1894, shall be maintained.

However, since the treaty of 1894 many tariff acts have been enacted. If any provision in tariff acts in regard to duty on imported merchandise is in conflict with the provisions of the treaty of 1894, the tariff acts being subsequent thereto must prevail. (*Ribos y Hijo* v. *United States*, 194 U. S. 315; *Domestic Fuel Corp.* and *George E. Warren Corp.* v. *United States*, T. D. 46455, 63 Treas. Dec. 1033, affirmed in 21 C. C. P. A. 600.) Therefore, it appears to us that if more favorable rates of duty were granted to Japan by the treaty of 1894, the various tariff acts since have abrogated them. At least plaintiffs have not pointed out to the court any more favorable rates of duty under the treaty of 1894 than are contained in the Tariff Act of 1930, and claimed their merchandise dutiable thereunder. It is fair to assume without deciding, therefore, that the treaty of 1894 has been abrogated so far as tariff duties are concerned.

As to the Treaty of Commerce and Navigation with Austria-Hungary: According to plaintiffs' brief this was proclaimed more than a hundred years ago, viz, on February 10, 1831, and Austria-Hungary is not any longer constituted as it was prior to the Great War of 1914–1918. It is therefore questionable, due to this fact, a later treaty with Austria proclaimed in 1931, and the numerous tariff acts enacted within the past hundred years whether this treaty of 1831 is still in force, especially in regard to duty on merchandise exported from Austria-Hungary to the United States and vice versa. We feel, however, that it is unnecessary to decide this question.

Plaintiffs in their brief have quoted from article IV of the Japanese Treaty and article V of the Austria-Hungary Treaty to the effect that "no other or higher duties shall be imposed" on importations into Japan or Austria-Hungary from the United States or into the United States from those countries, than on like articles produced or manufactured in any other foreign country. It is claimed therefore that under those treaties merchandise from Japan and Austria is entitled to the rates as provided in the trade agreement with Cuba, and that "Even if it be held otherwise, that right is accorded by section 350 and is applicable to all countries in the absence of a finding of discrimination." For that reason plaintiffs claim an allowance in duties of 20 per centum.

We have passed on a similar question in *Louis Wolf* v. *United States*, protest 882934–G, C. D. 48, except that in the case at bar in addi-

tion to merchandise from Japan there is merchandise imported from: Austria.

In the *Wolf* case, *supra*, it was distinctly found, and we so held,. that the treaty with Japan was a conditional one; that is, it did not. provide for reciprocal relations between one country and the other,. and therefore fell within the rule announced in *Bartram* v. *Robertson,*. 122 U. S. 116, and *Von Damm* v. *United States*, 25 C. C. P. A. 97,. T. D. 49094. The same rule was upheld in *Whitney* v. *Robertson*, 124 U. S. 190. In other words, section 350 precludes any generalization of the 20 per centum reduction in duties granted to Cuba by the Cuban treaty, by reason of any unconditional treaties with other nations. For a full discussion of our holding we refer to the *Wolf* case, *supra*.

It was held in *Von Damm* v. *United States, supra*, that the reciprocal. trade agreement with Cuba of August 24, 1934, is exclusive to Cuba,. and not to be generalized to other nondiscriminating countries.

In *Domestic Fuel Corp.* case, *supra*, Judge Evans of this court said. that there are two forms of most favored nation clauses, "one known as conditional, the other unconditional," and then stated:

Under the conditional form the contracting parties agree that each shall grant. to the other all favors and privileges which it has granted or may grant to any other (the most favored) nation freely, if the concession (to the third state) is. freely made or upon allowing the same compensation if the concession has been conditional. * * * In the unconditional type one state undertakes to give to the other (without reciprocity) any favors and privileges which it has granted or may grant to any other (the most favored) nation. * * * The conditional form recognizes and records a distinction between concessions gratuitously made,. and concessions made in return for an equivalent; whereas the unconditional form names no conditions or circumstances limiting the immediate and automatic extensions of any concession.

In the *Wolf* case, *supra*, we held that the agreement or treaty with. Cuba was a conditional one, "that is, if Cuba has received a benefit on the exportation of merchandise entering the United States, the United States shall receive a benefit as to merchandise exported from the United States into Cuba." For this reason, we held, the Cuban treaty was "not intended for countries outside the agreement, but. only for the parties thereto," viz, Cuba and the United States, not. Japan and Austria-Hungary. We said further, "There is not any rule of law or logic that would cause the effect of this legislation to enure to the benefit of merchandise from any other country."

As to the contention that plaintiffs are entitled to this reduction of 20 per centum on their merchandise from Japan and Austria by reason of an amendment to the Tariff Act of 1930, viz, section 350, found in T. D. 47117, 65 Treas. Dec. 1014, containing the following:

* * * The proclaimed duties and other import restrictions shall apply to. articles the growth, produce, or manufacture of all foreign countries, whether imported directly, or indirectly.

we called attention to subsection (b) of section 350, reading as follows:

(b) Nothing in this section shall be construed to prevent the application, with respect to rates of duty established under this section pursuant to agreements with countries other than Cuba, of the provisions of the treaty of commercial reciprocity concluded between the United States and the Republic of Cuba on December 11, 1902, or to preclude giving effect to an exclusive agreement with Cuba concluded under this section, modifying the existing preferential customs treatment of any article the growth, produce, or manufacture of Cuba; * * *

We then said—

It therefore necessarily follows that if there was strength in the plaintiff's reliance on section 350 (a), the very statute itself in subsection (b) destroys such reliance. Therefore, Congress did not have the intention to violate its agreement with Cuba of 1902; and the Tariff Act of 1930, section 316, specifically provides:

Nothing in this Act shall be construed to abrogate or in any manner impair or affect the provisions of the treaty of commercial reciprocity concluded between the United States and the Republic of Cuba on December 11, 1902, or the provisions of the Act of December 17, 1903, chapter 1.

In view of all that we said in our opinion in the *Wolf* case, *supra*, which we need not repeat, we hold that the merchandise involved in the case at bar from Japan and Austria is not entitled to the reduction in duty provided for in the trade agreement with Cuba.

The protests are overruled. Judgment for defendant.

### CONCURRING OPINION

Brown, Judge: I concur in the conclusion reached in the majority opinion. See opinion in *R. J. Prentiss & Co.* v. *United States*, decided October 17, 1938, C. D. 49, passing on protests 892188-G, etc., and also concurring opinion in *Louis Wolf & Co.* v. *United States*, passing on protest 882934-G, decided October 17, 1938, C. D. 48.