**BOWLES, Adm'r, OPA, v. SOVERINSKY et al.**

**No. 5558.**

District Court, E. D. Michigan, S. D.
May 20, 1946.

Theron M. Hall, Arthur J. Schuck, and George D. Haller, all of Detroit, Mich., Attys. for OPA, for plaintiff.

Shapero & Shapero, of Detroit, Mich., for defendants.

KOSCINSKI, District Judge.

Plaintiff's complaint alleges violation by defendants of Maximum Price Regulation No. 47, as amended, effective January 11, 1943 (8 F. R. 270) prescribing maximum prices for waste rags, ropes and strings, sold and delivered by dealers and brokers, and prays for final injunction restraining defendants from violating provisions of the regulation establishing maximum prices for waste materials and engaging in practices contrary to the provisions of the regulation, as issued.

Defendants answered, denying the alleged violations, and moved to dismiss the complaint on the grounds:

1. That it does not state a cause of action.

· 2. Because under the regulation a broker is not subject to injunction for selling to the consumer under the packing as labeled by the dealer.

3. That the Emergency Price Control Act is no longer in effect in that the emergency authorizing the enactment of said Act has passed and that since the ending of the war enforcement of the Act violates the due process clause of the Constitution and that it is contrary to the clause denying equal application of laws to all persons.

Trial of this case was commenced on May 6, 1946. On May 2, 1946, defendants filed a request for admission under Rule 36 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following Section 723c. Plaintiffs were requested to admit the existence of a custom of brokers in the purchase of goods from dealers not to examine the shipment but to rely on the rating of the dealer. The request must be suppressed for two reasons:

1. It does not give the plaintiff a minimum of ten days time to admit or deny, a mandatory requirement under Rule 36; and

2. The rule does not apply to a request for admission of this character. It applies only to admittable facts; to facts the truth or falsity of which the party may ascertain without much trouble or expense, and without basing them on opinion.—Vol. 2 Moore's Federal Practice, p. 2658, footnote 3.

### Findings of Fact

1. In September, 1945, prior thereto, and up to the time of the trial of this case defendants were engaged in buying and selling waste rags and other waste materials to consumers. Defendants' place of business is at Detroit, Michigan.

2. On or about September 26, 1945, defendants sold and delivered to the Weaver Wall Company, Avery, Ohio, 25 bales of Grade No. 2 roofing rags. Shipment of the bales was made by freight car loaded at Detroit, Michigan, on or about September 20, 1945, and received at the Weaver Wall Company's mill, Avery, Ohio, on September 26, 1945.

3. Under date of September 21, 1945, defendants sent an invoice of the shipment to the Weaver Wall Company from which it appeared that the shipment was made in car No. ATSF 148520 and that it consisted of 25 bales No. 2 roofing, weight 35,915 pounds, at a price of $29 per short ton, or a total amount of $520.77, this being the ceiling price on Grade No. 2 roofing rags under the Maximum Price Regulation 47. The invoice further showed a charge of $1 per ton brokerage fee or a total of $17.96 brokerage fee, this being the maximum brokerage charge under the same regulation.

4. Of the 25 bales shipped and invoiced by the defendants as Grade No. 2 waste rags only 10 to 12 were found by OPA to be of that grade after the shipment reached the mill, following an inspection of the contents of the bales. The remaining bales were determined to be No. 3 and No. 4 grade waste rags, the ceiling price of which is only $27 per short ton. The price of these was downgraded from the invoiced price and the defendants accepted the reduction.

5. Most of the rejected bales graded and invoiced by defendants as No. 2 waste rags contained from 10% to 30% rubbish, some contained 50% cotton droppings and 50% sawdust, one contained 400 pounds of oil, another 500 pounds of oil, others contained rubber, mattings, excelsior, and some considerable moisture.

## Conclusions of Law

1. Jurisdiction of this action is conferred upon this court by Section 205(c) of the Emergency Price Control Act of 1942, Pub. L. 421, 77th Cong., 2nd Sess., 56 Stat. 23, as amended by the Stabilization Act of 1944, Pub. L. 383, 78th Cong. 2nd Sess., as amended, 50 U.S.C.A.Appendix, § 901 et seq.

2. The Emergency Price Control Act of 1942, as amended, was in full force and effect in September, 1945, and was not ended by virtue of the cessation of hostilities between this country and the enemy countries in 1945.

3. Maximum Price Regulation No. 47 issued by the Price Administrator on January 5, 1943, as amended, was in full force and effect in September, 1945.

4. Defendants are "brokers" within the definition contained in the Maximum Price Regulation No. 47, as being persons who sold waste rags to a consumer, said waste rags not being packed by the broker.

5. No. 2 roofing rags are waste rags and consist of mixed rags which may include lining, rag carpets, print rags, or stockings, under Maximum Price Regulation No. 47, Sec. 1347.111(2) and Sec. 1347.114, App. A(b).

6. Defendants sold and delivered waste rags, rated as No. 2 roofing rags, which were not actually Grade 2 roofing rags, and in charging $29 per ton for the bales containing No. 3 and No. 4 roofing rags, the defendants violated provisions of Maximum Price Regulation No. 47 which sets the ceiling price on No. 3 and No. 4 grade roofing rags at $27 per short ton.

7. Defendants as brokers were allowed to charge their brokerage fee of $1 per short ton only upon compliance with all of seven distinct conditions set forth under Sec. 1347.114(f). In this particular transaction defendants failed to comply with three of these conditions:

(1) Their invoice sent to the consumer did not contain the name of the city where the shipment originated;

(2) They did not guarantee the merchantable quality of the waste rags;

(3) The billing or invoice did not contain a statement that the waste rags were not packed by the broker; and that the charges were not in excess of those established by Maximum Price Regulation No. 47.

[4] 8. The complaint states a cause of action. It conforms to requirements under Rule 8 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. It contains all of the necessary jurisdictional requirements, sets forth the statute under which it was brought, describes with sufficient clearness the transaction on which the complaint is based, sets forth the place and type of violation, supplements the description of the transaction by a bill of particulars showing the items relied upon as a violation of the Maximum Price Regulation and the Emergency Price Control Act and prays for appropriate injunctive relief. Any further information before trial was available to defendants under Rules 26 to 34, inclusive, of the Federal Rules of Civil Procedure, 28 U.S.C.A. following Section 723c. Defendants' motion to dismiss the complaint on the grounds that it does not state a cause of action is therefore denied.

9. Defendants argue that as brokers they are not subject to injunction for selling to the consumer when the packing and labeling of the bales was made by a dealer from whom they purchased the

waste rags. Defendant Jacob Soverinsky testified that he did not know the point of origin of this particular shipment; that his usual practice is to order such shipments to be made directly to the consumer from points in various parts of several different states, and that only about 20% of his shipments to the mills originate in Detroit where defendants' place of business is located; he also stated that he had no personal knowledge of this transaction until he received notice from the consumer, the Weaver Wall Company, that a number of the bales did not contain No. 2 roofing rags. Because a fire destroyed about 90% of the records of defendants' office, no data was available from such records as to the origin of this particular shipment. Only on rebuttal was it established by plaintiff that the freight car containing the 25 bales was loaded in Detroit, Michigan, on the Grand Trunk Railroad siding. The defendant Jacob Soverinsky testified also that his brother-in-law performed a substantial part of the trucking necessary to carry on the business at Detroit. The brother-in-law did not testify at the trial.

10. Defendants are bound by and subject to Maximum Price Regulation 47. They cannot avoid responsibility for the violations of the regulation in pleading ignorance of the details of this transaction, such as inability to state the origin of the shipment, the reason for invoicing all 25 bales as Grade No. 2 roofing rags, when in fact 13 to 15 of the bales were not Grade No. 2 but were of inferior quality and not fit to be used for the purpose for which they were purchased by the consumer, when in fact they were not of the merchantable quality described in the regulation mentioned.

11. The 25 bales were loaded on a freight car at Detroit. No plausible explanation was made by defendants at the trial why a check-up of the contents would not disclose the grade of each bale by even a cursory glance at the shipment, since the bales were held together by wire and contents could be seen without difficulty.

12. Defendants have violated Sec. 1347.-101 of Maximum Price Regulation 47 which provides:

"Regardless of any contract, agreement, lease or other obligation:

"(a) No person shall sell or deliver any waste rags, waste ropes, or waste strings at higher prices than the maximum prices set forth in Appendix A * * *.

\* \* \* \* \* \*

"(c) No person shall agree, offer, solicit or attempt to do any of the foregoing."

The violation consisted of the up-grading of 13 to 15 bales of waste roofing rags of Grade 3 and 4 to Grade 2 and pricing the same at the Grade 2 ceiling price; defendants hired a freight car and delivered these bales, under that invoice, to the purchaser.

13. Defendants attempt to avoid the injunctive relief requested by plaintiff by reliance on a claimed custom of the industry to the effect that all shipments are sold "subject to mill-grading" and that their action in this case was but an offer to sell the goods as of whatever grades the mill declared them to be. None the less, this procedure is a patent evasion of the unmistakable provisions of the regulation. Scarcity of waste materials has a tendency to encourage the kind of dealings here complained of and it is easily conceivable that a consumer would be willing to pay the up-graded price rather than close down his mill for a lack of those materials.

14. Defendants complain that they will be forced to cease operation of their business if required strictly to conform to the provisions of the regulation; that the brokerage fee of $1 per ton is too small a margin to warrant inspection of the bales for the purpose of grading and invoicing under the terms of the regulation. However, no showing was made by defendants at the trial of this case that any attempt was made by them to exhaust the administrative remedies for modification of this regulation as provided by Sec. 1347.106 of the regulation, nor did they ever institute any proceedings before the Emergency Court of Appeals provided by law. They were neither deprived of due process under the Constitution nor the equal protection of the laws. There are brokers throughout the country supplying waste materials to consumers. The regula-

tion applies with equal effect to all such persons in the same business. Defendants were not singled out by the Price Administrator in the enforcement of this regulation. If the defendants have elected to violate the provisions of the regulation instead of taking advantage of the procedure for modification provided for in the regulation itself or by contesting the validity of the regulation in the Emergency Court of Appeals (Lockerty v. Phillips, 319 U.S. 182, 63 S.Ct. 1019, 87 L.Ed. 1339), they will have to abide by the foreseeable consequences of their conduct.

15. It is next contended by defendants that the Emergency Price Control Act of 1942, assuming its constitutionality before cessation of hostilities, is now a dead letter since the emergency for which it was established is now passed; that the present enforcement of the provisions of Maximum Price Regulation 47 against the defendants at this time deprives them of due process of law under the Fifth Amendment of the Constitution of the United States and deprives them of equal protection of the laws under the Fourteenth Amendment.

"Cessation of hostilities" is not equivalent to "end of war". One of the purposes of the Emergency Price Control Act of 1942 is "to prevent a post-emergency collapse of values."—50 U.S.C.A.Appendix, § 901(a); Sub. (b) of Sec. 901 provides: "(b) The provisions of this Act, and all regulations, orders, price schedules, and requirements thereunder, shall terminate on June 30, 1945, or upon the date of a proclamation of the President, or upon the date specified in a concurrent resolution of the two Houses of Congress, declaring that the further continuance of the authority granted by this Act is not necessary in the interest of the national defense and security, whichever date is the earlier. * * *"

On June 30, 1945, Congress continued the Act in force and effect until June 30, 1946, or upon the date of the proclamation by the President, or upon the date specified in a concurrent resolution of the two Houses of the Congress, declaring that the further continuance of the authority granted by this Act is not necessary in the interest of the national defense and security, whichever date is the earlier, etc.—Ch. 214, Sec. 1, 59 Stat. 306.

In the absence of specific provisions to the contrary the period of war extends to the ratification of the treaty of peace or the proclamation of peace. — Hamilton v. Kentucky Distilleries Co., 251 U.S. 146, 165, 40 S.Ct. 106, 64 L.Ed. 194; Hijo v. United States, 194 U.S. 315, 323, 24 S.Ct. 727, 48 L.Ed. 994; The Protector, 12 Wall. 700, 702, 20 L.Ed. 463; United States v. Anderson, 9 Wall. 56, 70, 19 L.Ed. 615. In the Hamilton case the same argument was made as is now made here, that the end of state of war should be construed as the time when actual hostilities cease and when the actual war emergencies cease, by reason of our complete victory and the disarmament of the enemy, coupled with the demobilization of our army and the closing of war activities. In that case [251 U.S. 146, 40 S.Ct. 112], the court said:

" 'Conclusion of the war' clearly did not mean cessation of hostilities." To the same effect, Zimmerman v. Hicks, 2 Cir., 7 F.2d 443, Ex Parte Sichofsky, D.C., 273 F. 694, Miller v. Camp, D.C., 280 F. 520. Under these authorities this court must reject the defendants' contention that a state of war no longer exists between the United States and the enemy countries and that, on the contrary, emergencies which gave rise to the enactment of the Emergency Price Control Act of 1942 as amended are still existent and the Price Control Act continues to be in full force and effect.

## Judgment

Plaintiff's request for a final injunction is granted. Defendants, their agents, servants, employees, and all persons in active concert or participation with the defendants are enjoined from directly or indirectly selling or offering to sell, or delivering waste materials, including those covered by the regulation, at prices in excess of the maximum prices established therefor by Maximum Price Regulation 47, as heretofore or hereafter amended, up-grading waste materials, or otherwise violating said regulation or attempting or agreeing to do anything in violation thereof, or in

814

violation of any regulation or order, issued pursuant to the Act, establishing maximum price for waste material.