

# THE ATTORNEY GENERAL
# OF TEXAS

**AUSTIN 11, TEXAS**

PRICE DANIEL
ATTORNEY GENERAL

February 17, 1947

Honorable Maureen Moore
Commissioner, Bureau of
Labor Statistics
Austin, Texas

Opinion No. V-30

Re: Inasmuch as the President
has by proclamation de-
clared an end of hostili-
ties, does that also mean
that the state of nation-
al emergency has ceased
to exist?

Dear Mrs. Moore:

Your request for our opinion on the above cap-
tioned matter has been received by this department. We
quote from your letter as follows:

"Section 6 of the Nine, Fifty-four Hour Law,
enacted by the 48th Legislature, authorizes the
Labor Commissioner to grant certain exemptions from
the Nine, Fifty-four Hour Law 'in time of war and/
or when the President of the United States pro-
claims a state of national emergency to exist.'

"Inasmuch as the President has by proclama-
tion declared an end of hostilities, does that al-
so mean that the state of national emergency has
ceased to exist?"

Section 6 of the Nine, Fifty-four Hour Law,
referred to in your letter, sets forth certain excep-
tions during war or national emergencies. Section 9 of
this law deals with the authority of the Commissioner
of Labor Statistics to make an order granting an exemp-
tion in time of war under certain conditions.

We are confining our opinion to the meaning
of "in time of war" and to your question of whether or
not the state of national emergency has ceased to exist,
inasmuch as the President has by proclamation declared
an end of hostilities.

Title 38, Chapter 12, Sec. 704, U. S. C. A.,
provides in part as follows:

"The president shall prescribe by regulation (subject to the provisions of section 701(e) of this title) the date of the beginning and of the termination of the period in each war subsequent to the Civil War, including the Boxer Rebellion and the Philippine Insurrection, . . ."

As stated to you in opinion No. O-7368, approved October 25, 1946, this department has held in several opinions that a war is not concluded in the legal sense until some formal action by a competent authority terminating the war and re-establishing peace is had. The 77th Congress of the United States, by joint resolution, formally declared a state of war between the United States and certain foreign governments.

On May 27, 1941, by proclamation 2487, 1 CFR, Cum. Supp., 2.1, the President proclaimed a state of unlimited national emergency to exist. To date this proclamation has not been revoked.

In Vol. 41, Words and Phrases, the following definition of "Time of War" appears:

"'Time of War' continues from the date of the declaration of war by Congress until some formal proclamation of peace by an authority competent to proclaim it." Ex parte Givins, D. C. N. D., Ga., 262 F. 702, 705.

Our research discloses that neither Congress nor the President has formally declared a termination of the War referred to above. On December 31, 1946, the President of the United States issued Proclamation 2714, entitled "Cessation of Hostilities of World War II." The proclamation is published in Vol. 12, No. 1, of the Federal Register dated January 1, 1947, a portion of which is quoted:

"Although a state of war still exists, it is at this time possible to declare, and I find it to be in the public interest to declare, that hostilities have terminated." (Emphasis supplied)

"Now, therefore, I, Harry S. Truman, President of the United States of America, do hereby proclaim the cessation of hostilities of World War II, effective 12 o'clock noon, December 31, 1946."

Hon. Maureen Moore, page 3 (V-30)

In the case of Ribas y Hijo v. United States, decided May 16, 1904, 194 U. S. 315, 24 S. Ct. 727, 48 L. Ed. 994, Mr. Justice Harlan, in duscussing the case at bar, said:

"It is none the less a case sounding in tort because the claim is in form for the use of the vessel after actual hostilities were suspended by the protocol of August 12th, 1898. A state of war did not, in law, cease until the ratification in April 1899, of the treaty of peace. 'A truce or suspension of arms,' says Kent,'does not terminate the war, but it is one of the commercia belli which suspends its op erations. . . . At the expiration of a truce, hostilities may recommence without any fresh declaration of war.' 1 Kent, Com. 159, 161."

In the case of Citizens Protective League et al. v. Clark, Attorney General of U. S., and Reimann v. Same, decided May 2, 1946, by the United States Court of Appeals, District of Columbia, 155 F. R. (2d) 290, Associate Justice Prettyman said:

". . . No peace treaty has yet been signed with Germany, and a state of war has not been terminated by an Act of Congress or by executive proclamation. Cases involving the termination of other wars dispose of Appellants' point. It is not for the Court to determine the end of a war declared by the Congress."

It is our opinion, therefore, on the basis of the authorities and laws hereinabove cited, that a "Time of War" and national emergency still exist, even though the President has proclaimed a cessation of hostilities.

## SUMMARY

There is a fundamental difference between the "end of hostilities" and the "end of a war." The President's Proclamation of December 31, 1946, declares only cessation of hostilities of World War II and recognizes that "a state of war" still exists. Such state of war can be terminated only by Congress or Presidential Proclamation pursuant to authority of Congress, which has not been done in relation to World War II or the national emergency proclaimed by President Roosevelt on May 27, 1941. Therefore, Section 6 of Senate Bill 129,

Hon. Maureen Moore, page 4 (V-30)

48th Legislature, setting forth certain exceptions
during war or national emergencies, and Section 9
of such Senate Bill authorizing the Commissioner
of Labor Statistics to make an order granting an
exemption in time of war under certain conditions,
are still in effect.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By J. A. Amis, Jr.
Assistant

APPROVED FEB. 17, 1947

Price Daniel
ATTORNEY GENERAL

JAA:AMM:jrb