## UNITED STATES ex rel. GOODWIN v. KARNUTH.

### Civ. No. 3588.

District Court, W. D. New York.
Nov. 28, 1947.

Edward E. Franchot, of Niagara Falls, N. Y., for petitioner.

Hon. George L. Grobe, U. S. Atty., and Herman I. Branse, Naturalization Examiner Review Immigration and Naturalization Service, both of Buffalo, N. Y. (R. Norman Kirchgraber, Asst. U. S. Atty., of Buffalo, N. Y., of counsel), for respondent.

KNIGHT, District Judge.

Petitioner was taken into custody by the Immigration and Naturalization Service pursuant to a warrant directing her deportation to Canada on the ground that she was not in possession of an immigration visa and passport and that she entered by false and misleading statements, thereby entering without inspection. A writ of habeas corpus was then issued by this court upon a petition by the petitioner, who claimed that she was being illegally detained.

Petitioner is a full-blooded North American Indian, born on the Six Nations Reservation, Brantford, Ontario, Canada, on May 28, 1918. She claims to be a member of the Upper Cayuga Tribe of the Six Nations Indians in Canada. On November 21, 1934, she married a native citizen of Canada

of the white race. The warrant of deportation is dated July 13, 1946.

Section 226a of Chapter 6, Immigration, of Title 8 of U.S.C.A., which deals with Aliens and Nationality, provides as follows: "Sec. 226a. American Indians born in Canada; right to cross Canadian border. This chapter shall not be construed to apply to the right of American Indians born in Canada to pass the borders of the United States: Provided, That this right shall not extend to persons whose membership in Indian tribes or families is created by adoption." This section became effective April 2, 1928.

Respondent urges that it does not apply to Indians who are not members of a tribe and claims that petitioner is tribeless because of section 14 of the Indian Act of Canada, Ch. 98, Rev.Stat. of Canada, 1927, which reads: "14. Any Indian woman who marries any person other than an Indian, or a non-treaty Indian, shall cease to be an Indian within the meaning of this Act, except that she shall be entitled to share equally with the members of the band to which she formerly belonged, in the annual or semi-annual distribution of their annuities, interest moneys and rents; but such income may be commuted to her at any time at ten years' purchase, with the approval of the Superintendent General. 1920 C. 50, S. 2."

The term "Indian" is not defined in Title 8 of U.S.C.A. or in Chapter 6 dealing with Immigration. Is it to be given a political connotation, as urged by respondent, or a racial connotation, as urged by petitioner?

In 42 C.J.S., Indians, § 1 it is said: " 'Indians' is the name given by the European discoverers of America to its aboriginal inhabitants. When used in a statute without any other limitation, the term has been said to include members of the aboriginal race, whether now sustaining tribal relations or otherwise." The only authority cited for this statement is Frazee v. Spokane County, 29 Wash. 278, 69 P. 779.

In Mosier v. United States, 8 Cir., 198 F. 54 certiorari denied 229 U.S. 619, 33 S.Ct. 778, 57 L.Ed. 1354, a case involving a violation of the Act of June 28, 1906, 34 Stat. 539, prohibiting the giving of liquor to Osage Indians of Oklahoma, the court said: "The word 'Indian' describes a person of Indian blood. The word 'citizen' describes a political status. If as a matter of law and fact the government is exercising guardianship over an Indian who is also a citizen, it is not for the courts to say when the guardianship shall cease." 198 F. at page 57.

In other Federal Statutes, the term "Indian" connotes "blood".

Section 479 of Title 25 of U.S.C.A., dealing with Indians, provides as follows: "Sec. 479. Definitions. The term 'Indian' as used in sections 461, 462, 463, 464-473, 474, 475, 476-478, and 479 of this title shall include all persons of Indian descent who are members of any recognized Indian tribe now under Federal jurisdiction, and all persons who are descendants of such members who were, on June 1, 1934, residing within the present boundaries of any Indian reservation, and shall further include all other persons of one-half or more Indian blood. For the purposes of said sections, Eskimos and other aboriginal peoples of Alaska shall be considered Indians. The term 'tribe' wherever used in said sections shall be construed to refer to any Indian tribe, organized band, pueblo, or the Indians residing on one reservation. * * *."

This section became effective June 18, 1934.

Section 206 of Title 48 of U.S.C.A., dealing with Territories and Insular Possessions, contains definitions among which are these:

"Indians: Natives of one-half or more Indian blood.

"Eskimo: Natives of one-half or more Eskimo blood."

The criterion of "blood" is applied in Section 212c of 8 U.S.C.A., in defining the terms "persons of races indigenous to India" and "Chinese person."

Section 222 of 8 U.S.C.A. provides: "The Commissioner of Immigration and Naturalization, with the approval of the Attorney General, shall prescribe rules and regulations for the enforcement of the provisions of this chapter; but all such rules and regulations, insofar as they relate to the administration by consular officers, shall be prescribed by the Secretary of State on

the recommendation of the Attorney General."

"These regulations, prescribed pursuant to law, have the force and effect of law." Haff v. Tom Tang Shee, 9 Cir., 63 F.2d 191, 193. "If these regulations conflict with an act of Congress or with a treaty, which is the law of the land (U.S.Const. art. 6, cl. 2), they would to that extent be void." Shizuko Kumanomido v. Nagle, 9 Cir. 40 F.2d 42, 44.

■ It appears that no case precisely like the present has been judicially decided. McCandless v. United States, 25 F.2d 71, was decided by the Circuit Court of Appeals, 3rd Cir. on March 9, 1928, a few days before the enactment of 8 U.S.C.A. § 226a. In that case Paul Diabo, a full-blooded Indian of the Iroquois tribe, known as the Six Nations, born on a reservation of that tribe in the Dominion of Canada, had been arrested on a warrant issued on complaint of the Commissioner of Immigration for the port of Philadelphia for an alleged violation of law in entering the United States without complying with the immigration laws. The question was decided on a writ of habeas corpus. "After hearing he was discharged from custody, whereupon this appeal was taken, and the question involved is whether the immigration laws of the United States apply to members of the tribe of the Six Nations born in Canada." 25 F.2d at page 71.

The Circuit Court quoted Article III of the Jay Treaty, 8 Stat. 117, made in 1794 between Great Britain and the United States, and article 9 of the Treaty of Ghent, 8 Stat. 222, which ended the War of 1812, and affirmed the order of the court below (D.C., 18 F.2d 282) discharging Diabo from custody.

From the court's opinion it appears that Diabo during all the time of his residence in the United States was a member of "the tribe of the Six Nations born in Canada."

Article III of the Jay Treaty of 1794 provided: "It is agreed that it shall at all times be free to his Majesty's subjects, and to the citizens of the United States, and also to the Indians dwelling on either side of the said boundary line, freely to pass and repass by land or inland navigation, into the respective territories and countries of the two parties, on the continent of America (the country within the limits of the Hudson's Bay Company only excepted)."

Respondent urges that the Jay Treaty was abrogated by the War of 1812 (citing Karnuth v. United States, 279 U.S. 231, 49 S.Ct. 274, 73 L.Ed. 677) and that under the Treaty of Ghent and said section 226a only members of Indian tribes were intended. I do not agree with this view.

Article 9 of the Treaty of Ghent provided: "The United States of America engage to put an end, immediately after the ratification of the present treaty, to hostilities with all the tribes or nations of Indians with whom they may be at war at the time of such ratification; and forthwith to restore to such tribes or nations, respectively, all the possessions, rights, and privileges, which they may have enjoyed or been entitled to in one thousand eight hundred and eleven, previous to such hostilities * * *."

■ Article III of the Jay Treaty mentions "the Indians dwelling on either side of the said boundary line." The Circuit Court in McCandless v. United States, supra, 3 Cir., 25 F.2d 71, at page 73, held that the Treaty of Ghent "recognized and restored the Indian status of the Jay Treaty." Section 9 of the Treaty of Ghent mentions "tribes or nations of Indians." Said section 226a mentions "American Indians born in Canada." If the latter term is broader in its connotation than the terms used in the treaties, the statute must prevail "for, it is well settled that in case of a conflict between an act of Congress and a treaty,— each being equally the supreme law of the land,—the one last in date must prevail in the courts." Hijo v. United States, 194 U.S. 315, 324, 24 S.Ct. 727, 729, 48 L.Ed. 994.

■ The U. S. Supreme Court has said: "There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning." United States v. American Trucking Ass'ns, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345.

"Congress may well be supposed to have used language in accordance with the common understanding." United States v. Wurts, 303 U.S. 414, 417, 58 S.Ct. 637, 639, 82 L.Ed. 932, quoting Union Pacific R. Co. v. Hall, 91 U.S. 343, 347, 23 L.Ed. 428. "The popular or received import of words furnishes the general rule for the interpretation of public laws." Woolford Realty Co. v. Rose, 286 U.S. 319, 327, 52 S.Ct. 568, 570, 76 L.Ed. 1128, quoting Maillard v. Lawrence, 16 How. 251, 261, 14 L.Ed. 925 and Old Colony R. Co. v. Commissioner, 284 U.S. 552, 560, 52 S.Ct. 211, 76 L.Ed. 484.

Adopting this rule of construction, the words "American Indians born in Canada", found in 8 U.S.C.A. § 226a must be given a racial connotation. The second clause in the section does not require a different interpretation. It reads: "Provided, That this right shall not extend to persons whose membership in Indian tribes or families is created by adoption." This means that such adoption does not make the adoptee an American Indian by "blood", entitling him to free entry under the first clause. One whom nature has not made an American Indian cannot be made one by adoption in some Indian tribe or family.

Respondent contends that the term "American Indians born in Canada" connotes political status and that petitioner lost this status when she married a white man.

He relies upon section 14 of the Indian Act of Canada, Ch. 98, Rev.St. of Canada 1927, supra.

The effect of such marriage is not to enfranchise the Indian woman. Enfranchisement is effected by the procedure outline in section 110 of the Indian Act, which further provides that "from the date of such enfranchisement the provisions of this and of any other Act or law making any distinction between the legal rights, privileges, disabilities and liabilities of Indians and those of His Majesty's other subjects, shall cease to apply to such Indian or to his or her minor unmarried children * * *."

It is not claimed that petitioner since her marriage has become enfranchised.

For the reasons herein stated the petitioner must be discharged from custody.