## SAMUELS v. UNITED SEAMEN'S SERVICE, Inc.
### No. 11630.

Circuit Court of Appeals, Ninth Circuit.
Jan. 9, 1948.

Rehearing Denied Feb. 10, 1948.

Theodore M. Monell, of San Francisco, Cal., for appellant.

J. J. Doyle, of San Francisco, Cal., for appellee.

Before MATHEWS, BONE, and ORR, Circuit Judges.

BONE, Circuit Judge.

This is an appeal from a judgment of the district court in an action for declaratory relief arising out of the construction of a provision in a lease between appellant and appellee.

On September 15, 1943 appellant Samuels, a resident of California, leased certain premises in the City of San Francisco to appellee United Seamen's Service, Inc., a New York corporation. Appellee is a non-profit organization which was formed at the request of the U. S. Maritime Commission and the War Shipping Administration for the purpose of providing lodging and recreation places for merchant seamen. The written lease provided that its term should "extend for a period of six (6) months from and after the cessation of hostilities in the present war with Japan." There was no discussion by the parties when entering into this lease contract concerning the meaning of this quoted language, or its effect upon the termination date of the lease. The parties stipulated that August 14, 1945 was "V-J Day," at which time the orders were given to cease fire, and that on September 1, 1945 on board the U.S.S. Missouri the formal document of surrender was executed between the then empire of Japan and the United States of America.

About the end of February, 1946 appellant's agent and appellee's local representative discussed an extension or renewal of the lease at an increased rental, but appellee's New York office later rejected this proposal being of the opinion that the original lease was still in effect. Appellant thereupon brought this action for declaratory relief in a California state court. The cause was subsequently removed to the United States District Court on the ground of diversity of citizenship.[1] Jurisdictional requirements are present.

Appellant alleged that the parties intended that the lease terminate six months after the cessation of open and hostile warfare as accomplished by the surrender of Japan on August 14, 1945. The trial court held in effect, and appellee here contends, that termination of the lease required a formal governmental determination of the cessation of hostilities (which determination was made by Presidential Proclamation on December 12, 1946, effective December 31, 1946).

The sole question then before this court is whether the lower court ascribed the correct meaning to the language in the lease, that is that it should terminate "six months from and after the cessation of hostilities in the present war with Japan."

As indicated above, nothing was said by the parties regarding the termination date until renewal or extension negotiations were begun some time prior to March, 1946. Papers, which apparently extended or renewed the lease, were executed and sent to the home office of appellee, in New York. That office returned the papers, being apparently of the view here contended for by appellee that the language of the lease required it to be construed as being in force until six months after the official proclamation of the cessation of hostilities.

Construction (in this case) is necessarily the ascertainment of meaning, as nearly as it can be measured by the purpose and understanding of the parties when they entered into the lease contract. They provide no aid in the way of proof of an agreement or understanding as to the meaning or significance they then attached to the phrase "from and after the cessation of hostilities in the present war with Japan." The lease was apparently prepared by a representative of appellant, and (with certain changes) approved by the "home office" of appellee— this at a time when the war was in a critical stage. Speed was vital, and it may

---

[1] There is a California statute providing for declaratory relief, California Civil Procedure & Probate Code (Deering) § 1060, similar to that afforded by the federal declaratory judgments act, 28 U.S.C.A. § 400, § 274d, Judicial Code.

be assumed, without doing violence to logic or reason, that the appellee was moved by a desire to speedily provide the proposed facilities for merchant seamen—a motive wholly in keeping with the spirit of the enterprise. Since there was no discussion whatever concerning the termination date, it is an equally tenable conclusion that the parties did not then seriously concern themselves with, or attempt to decide, the technical question here presented.

■ In this situation, words must be construed in their ordinary sense without regard to possible refinements of technical legal linguistics. It may fairly be postulated that the parties were not thinking in terms of political or diplomatic parlance when they employed this particular language. The lease contract did not state merely "the end of the war." It simply, but very specifically specified "the *cessation* of hostilities *in* the present war." (Emphasis supplied.) Webster defines "hostilities" as follows: "State of being hostile; enmity. An act of open enmity; a hostile deed; especially (plural) acts of warfare. Hostility is (commonly open) antagonism, especially as manifested in action."

■ The circumstances attending the execution of this lease also help to illuminate the meaning of the language used. Appellee desired to use appellant's premises to provide for the entertainment and welfare of merchant seamen who at the time were passing in great numbers through the port of San Francisco while engaged in the work of carrying men and supplies to battle areas. The record does not tell us whether appellee anticipated the necessity of occupying the leased property for a brief time or a long time after the shooting part of the war had ended. However, it is a logical conclusion that in all probability the major part of the merchant marine's active wartime functions would be more likely to have been fulfilled six months after the cessation of open and active fighting, than six months after some *indefinite* later date, left entirely to determination by some official political pronouncement.

The record makes apparent that appellee's local representatives were, in February 1946, of the view that the lease term had expired, since at that time they engaged in a discussion with appellant regarding an extension or renewal of the lease—a consummation thereafter interrupted by rejection of the proposal by the New York office of appellee.

It is true that certain war-time federal statutes were to be terminated "upon the cessation of hostilities, as proclaimed by the President." Such statutes were obviously operative until a formal Presidential proclamation. But the lease did not provide that the term should end concurrently with the termination of such statutes or upon any such Presidential proclamation. It is silent as to any such matters and we cannot infer that the parties, in executing the lease, deliberately intended to make formal Presidential or Congressional action a yardstick of time wherewith to measure the lease term. It would have been a very simple matter to so indicate had the parties desired to make this sort of official action the decisive test.

The authorities cited in the trial court's opinion deal in every case with the termination date of statutes, state and federal, and we fail to see that they help resolution of what the parties to this lease intended. In fact, the authorities cited by the trial court and by appellee, stating that "the conclusion of war did not mean the cessation of hostilities," make clear that although there was a cessation of hostilities in November, 1918 in the first World War and in August, 1945 in the second World War, the state or period of war continued thereafter. Hamilton v. Kentucky Distilleries & Warehouse Co., 251 U.S. 146, 40 S.Ct. 106, 64 L.Ed. 194; Bowles v. Soverinsky, D.C., 65 F.Supp. 808. The decisions cited by appellee to the effect that a state of war, once declared by Congress, continues until ratification of a treaty of peace, are here in no wise controverted and are patently not apposite to this inquiry.

The three cases cited by appellant (Nelson v. Manning, 53 Ala. 549; Kaiser v. Hopkins, 6 Cal.2d 537, 58 P.2d 1278; Scott v. Commissioner of Civil Service, 272 Mass. 237, 172 N.E. 218) to the effect that the state of war was concluded when the fighting ended, for the purposes considered in

412

those cases, are not particularly helpful in determination of the case at bar. In fact no authority squarely in point has been cited by counsel or discovered by the court.[2]

However, we have no difficulty in concluding that under the particular circumstances of this case the ordinary meaning to attach to the phrase "cessation of hostilities in the present war with Japan," is the termination of open and hostile warfare activity which was effected on V-J Day, August 14, 1945. Consequently, the lower court's determination that the lease in question was not terminated until six months after Presidential proclamation of the cessation of hostilities, was erroneous, and its judgment must be reversed.

Reversed.

[2] An annotation entitled "Meaning of term 'duration' or 'end of war' employed in contract" is contained in 168 A.L.R. 173 (1947). This compilation indicates that there is a division of authority as to whether the periods suggested by such words and phrases are determined by formal declarations of war and peace or by the opening and closing of actual hostilities, and recognizes that resolution of the question must be arrived at according to the peculiar facts of each case. No cases are referred to in the annotation (other than the lower court's decision in this case) wherein the terminology "cessation of hostilities" was construed.