UNITED STATES *v.* STANDARD RICE CO., INC.

No. 72. Argued November 16, 1944.—Decided December 4, 1944.

efficient remedy may be had at law or in equity in the courts of such State."

*Miss Helen R. Carloss,* with whom *Solicitor General Fahy, Assistant Attorney General Samuel O. Clark, Jr., Messrs. Sewall Key, Robert N. Anderson, Walter J. Cummings, Jr.,* and *Mrs. Elizabeth B. Davis* were on the brief, for the United States.

*Mr. M. K. Eckert,* with whom *Mr. John C. White* was on the brief, for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This suit was brought in the Court of Claims to recover an overpayment of income taxes made by respondent. The United States conceded that the amount claimed was owed. But the Comptroller General, pursuant to his power under § 305 of the Budget and Accounting Act of 1921 (42 Stat. 20, 31 U. S. C. § 71) settled and adjusted the claim by offsetting against it an amount which he concluded respondent owed the United States under a contract. Since the latter claim equalled the overassessment on the income taxes, the Comptroller General refused to authorize a refund to respondent. This suit followed. The Court of Claims denied the offset and entered judgment for respondent in the amount claimed with interest. 101 Ct. Cls. 85, 53 F. Supp. 717. The case is here on a petition for a writ of certiorari[1] which we

---

[1] See Act of February 13, 1925, § 3 (b), 43 Stat. 939, amended by the Act of May 22, 1939, 53 Stat. 752, 28 U. S. C. § 288 (b).

granted because of an asserted conflict of the decision below with *United States* v. *American Packing & Provision Co.*, 122 F. 2d 445 and *United States* v. *Kansas Flour Mills Corp.*, 314 U. S. 212.

The contract under which the claim against respondent was asserted was made in November, 1935. Respondent agreed to supply rice to the Navy Department at the bid prices specified in the contract. A typical price provision listed 290,000 pounds of rice at a unit price (per pound) of .046¢ or a total price of $13,340. The contract contained the following provision:

"Prices bid herein include any federal tax heretofore imposed by the Congress which is applicable to the material on this bid. Any sales tax, duties, imposts, revenues, excise or other taxes which may hereafter (the date set for the opening of this bid) be imposed by the Congress and made applicable to the material on this bid will be charged to the Government and entered on invoices as a separate item."

Respondent made the required deliveries to the United States and received the full price specified in the contract. Respondent was the first domestic processor of the rice and accordingly paid the processing taxes imposed by the Agricultural Adjustment Act (48 Stat. 31, 7 U. S. C. §§ 609, 611) from April 1, 1935, until September 20, 1935. Before paying the processing tax on the rice processed for the month of October, 1935, respondent obtained an injunction against its collection. The tax was held invalid in *United States* v. *Butler,* 297 U. S. 1, decided January 6, 1936. Consequently respondent never paid the processing taxes on the rice supplied to the United States under the November, 1935, contract.[2]

---

[2] Respondent did, however, pay an unjust enrichment tax of $72,072.30 on account of being relieved of the processing tax. See Title III of the Revenue Act of 1936, 49 Stat. 1648, 1734. It was computed and assessed upon the basis of inclusion of units involved

The tax was a federal tax "applicable" to the rice within the meaning of the contract. *United States* v. *Glenn L. Martin Co.,* 308 U. S. 62, 65. Its amount was known, and the vendor was responsible by regulation for its payment. *United States* v. *Kansas Flour Mills Corp., supra,* p. 214. It is therefore arguable that the vendor fixed the bid price to provide a margin of profit after payment of those taxes for which it was responsible, that the price was designed to offset *pro tanto* the amount of the taxes, and that if they were not paid, the price should be reduced. That is the position taken by the United States and it relies on the following statement in *United States* v. *Kansas Flour Mills Corp., supra,* pp. 216–217: "In the contracts in question, the Government did not buy for resale. Unless it received the tax it suffered a definite disadvantage. Its purpose, as shown by the contracts, was to balance the tax element in the price paid with the tax collected. The Government, which could not pass on the tax on resale, was thus protected, not against a fall in the market price but against a loss in its tax revenues." But we were there only answering the argument that since the vendor did not undertake to pay the tax, the rule in private contracts should be followed and no readjustment of the price made where the tax was not paid. The difference between the cases was that in the latter situation the vendee presumably passed on the tax while the United States did not since it did not buy for resale. The vital fact in *United States* v. *Kansas Flour Mills Corp.* was the provision in the contract for an up-or-down revision of the price in

in this suit. If those units had been excluded, the unjust enrichment tax would have been reduced by $1,706.59. If respondent is required to reduce its price by the amount of the unpaid processing tax, it is not subject to the unjust enrichment tax on these transactions. See *United States* v. *Kansas Flour Mills Corp., supra,* p. 216, note 6. The United States concedes that if it prevails the respondent is entitled to recover $1,706.59.

case of a change in the processing tax by Congress. It provided that if a processing tax was thereafter "imposed or changed by the Congress," the contract price was to be "increased or decreased accordingly." It was held that the decision in *United States* v. *Butler* and its recognition in the Revenue Act of 1936 amounted to a downward change calling for a decrease in the contract price. 314 U. S. p. 217. There is no such provision in the present contract. The clause that the bid prices include "any federal tax heretofore imposed by the Congress which is applicable to the material" must be read in the context of this particular contract. When it is so read, a result different from that reached in *United States* v. *Kansas Flour Mills Corp.* is indicated.

The present contract provides for payment by the United States of sales and other taxes thereafter imposed by Congress and made applicable to the rice. But while it makes that provision for upward readjustment of the price, it provides for no downward revision in case of subsequent changes in any tax. That silence gains added significance here in view of the fact that at the time the contract was made the payment of these processing taxes was being hotly contested and the litigation resulting in *United States* v. *Butler, supra,* was well under way. The inference is strong therefore that the parties intended the price to be firm, except as it might be increased through the imposition of new taxes. The provision for the inclusion of applicable taxes provides a formula for determining the price to be billed. Since the tax in question could not by the terms of the contract be billed to the United States, there was no overcharge. If the contractor lawfully avoids payment of a tax he reduces his cost and increases his profit. But in absence of a provision which authorizes it the reduction of cost is hardly the basis of a refund to the United States. As the Court of Claims points out, it is hard to see how the vendor could be re-

quired to pay the United States any savings which it made as a result of reductions in tariff duties. Yet the difference between them and other taxes under this contract is not apparent. Although there will be exceptions, in general the United States as a contractor must be treated as other contractors under analogous situations. When problems of the interpretation of its contracts arise the law of contracts governs. *Hollerbach* v. *United States,* 233 U. S. 165, 171–172; *United States* v. *Bethlehem Steel Corp.,* 315 U. S. 289, 298–299. We will treat it like any other contractor and not revise the contract which it draws on the ground that a more prudent one might have been made. *United States* v. *American Surety Co.,* 322 U. S. 96.

*Affirmed.*

MR. JUSTICE BLACK dissents.