## GIRDLER CORP. v. CHARLES ENEU JOHNSON & CO.

### No. 10092.

United States District Court
E. D. Pennsylvania.

Feb. 6, 1951.

---

94. See Note 75, supra.

Thomas E. Comber, Jr. (of Pepper, Bodine, Stokes & Hamilton), Philadelphia, Pa., for plaintiff.

Walter Biddle Saul (of Saul, Ewing, Remick & Saul), Philadelphia, Pa., for defendant.

GRIM, District Judge.

During World War II there was a critical shortage of carbon black, which was an essential ingredient in the manufacture of synthetic rubber. In order to increase the supply of carbon black the United States Government, through its agency, Defense Plant Corporation, entered into a contract with Charles Eneu Johnson and Company, the defendant in this case, to design, supervise and operate a plant in New Mexico for the manufacture of carbon black out of natural gas. In order to manufacture carbon black in the required manner it was necessary to obtain from the Girdler Corporation, the plaintiff in this case, the right to use a patented process, known as the Girbotol process, which was owned by it. Consequently, Defense Plant Corporation entered into a contract with plaintiff by which plaintiff gave Defense Plant Corporation the right to use the Girbotol process. In order to aid in the war effort plaintiff in the contract charged a rate for the use of the process which was appreciably below the rate which plaintiff otherwise would have charged, but the contract provided that the low rate of payment for the use of the process should continue only to the end of the "war period", the end of the "war period" being described in the contract as six months after the date of the "cessation of hostilities" between the United States and Germany and Japan. At the end of the "war period" the price to be charged for the use of the process increased considerably.

The contract also gave Defense Plant Corporation the right to designate the defendant herein, or any other nominee, to use the process in the plant which Defense

Plant Corporation had built. It provided further that when the designation was made the nominee would obtain all the rights and assume all the obligations of Defense Plant Corporation under the contract. Immediately after the execution of the contract, the defendant herein was designated the nominee and it entered into an agreement with Defense Plant Corporation and the plaintiff herein assuming all the obligations of the contract.

Defendant continued to use the process after the surrender of both Germany and Japan. This action has been brought by the plaintiff for an accounting and to recover from the defendant royalty payments alleged to be due the plaintiff since six months after September 2, 1945, which is the date Japan formally surrendered. Plaintiff contends that September 2, 1945, marked the cessation of hostilities and that the higher royalty payments started six months after that time. Defendant contends that the cessation of hostilities did not come until December 31, 1946, when the President of the United States formally proclaimed that:

"* * * Although a state of war still exists, it is at this time possible to declare, and I find it to be in the public interest to declare, that hostilities have terminated.

"Now, therefore, I, Harry S. Truman, President of the United States of America, do hereby proclaim the cessation of hostilities of World War II, effective twelve o'clock noon, December 31, 1946."

▇ The problem of the meaning of the clause in the present contract and other similar clauses has come before the courts on numerous occasions. The courts have uniformly held that the terms "cessation of hostilities", "termination of the war", "duration of the war", "engaged in war" and "acts of war" refer to the end of actual hostilities. Samuels v. United Seamen's Service, 9 Cir., 1948, 165 F.2d 409; Boston Penny Savings Bank v. Stoneholm Co., 1949, 323 Mass. 662, 83 N.E.2d 885; Stinson v. New York Life Ins. Co., 1948, 83 U. S.App.D.C. 115, 167 F.2d 233; Darnall v. Day, 1949, 240 Iowa 665, 37 N.W.2d 277.

Under these cases, plaintiff might well contend that the cessation of hostilities in World War II came on August 14, 1945, since that is the date when hostilities actually ceased, but it does not press this point.

▇ Defendant points to the fact that the contract in the present case was executed as an aid to the war effort, and contends that as a contract in which the public was interested it must be construed in a manner different from the construction of an ordinary private contract. It further contends that since the contract involved a matter in which the public was interested the meaning of "cessation of hostilities" must be construed in accordance with the public proclamation by the President setting forth when the cessation of hostilities occurred. With this contention I do not agree. In 9 Williston on Contracts, Sec. 46, P. 65, it is said: "* * * The words of contracts should be given a reasonable meaning rather than an unreasonable one and a court will endeavor to give a construction most equitable to the parties and which will not give one of them an unfair or unreasonable advantage over the other.

* * * The same principles of right and justice which prevail between individuals should control in the construction and carrying out of contracts between the Government and individuals. U. S. v. [Utah, Nevada and California] Stage Co., 199 U.S. 414, [26 S.Ct. 69] 50 L.Ed. 251. A Government contract should be interpreted as are contracts between individuals with a view to ascertaining the intention of the parties and to give it effect accordingly, if it can be done consistently with the terms of the instrument. Hollenbach v. U. S., 233 U.S. 165, [34 S.Ct. 553] 58 L.Ed. 898."

In United States v. Standard Rice Co., 1944, 323 U.S. 106, 111, 65 S.Ct. 145, 147, 89 L.Ed. 104, it was said: "* * * Although there will be exceptions, in general the United States as a contractor must be treated as other contractors under analogous situations. When problems of the interpretation of its contracts arise the law of contracts governs. * * *"

As the numerous cases construing clauses similar to the clause in the present case point out, the ordinary meaning of the words indicates that the parties intended the end of actual hostilities to control the situation. There is nothing in the words of the present contract to indicate that the parties in this case intended otherwise.

Accordingly, it is ordered, adjudged and decreed that the cessation of hostilities as provided in the contracts occurred on September 2, 1945, and, therefore, judgment is for the plaintiff, and the defendant herein is directed to account to the plaintiff the sum due under Article III, Paragraph 1 of the contracts and forthwith pay to the plaintiff the moneys determined to be due by said accounting.