**Pedro SYQUIA, Gonzalo Syquia and Leopoldo Syquia**

v.

**The UNITED STATES.**

**No. 50130.**

United States Court of Claims.

Oct. 5, 1954.

John P. Lipscomb, Jr., Washington, D. C., for plaintiffs. Allison J. Gibbs, Manila, Philippine Islands, Frederic P. Lee and Alfred M. Osgood, Washington, D. C., were on the briefs.

Walter Kiechel, Jr., Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

Plaintiffs, citizens and residents of the Philippine Islands, owned three apartment buildings in the City of Manila, Philippine Islands. These buiildings were leased to defendant in 1945 for "the duration of the war and six months thereafter," unless sooner terminated by defendant. This suit is brought to recover the difference between the rental specified in the leases, which was paid to plaintiffs by defendant, and the alleged reasonable rental value of the buildings, during the period between the alleged term of the leases with defendant and the release of the properties by defendant, in 1948. Plaintiffs' petition is in the alternative, the allegations being that the leases terminated: (1) six months after August 14, 1945, the end of hostitities; (2) six months after September 1, 1945, the formal surrender of Japan; or (3) six months after May 11, 1946. The amounts claimed on the basis of the various alternatives are, respectively: (1) $200,750; (2) $189,800; or (3) $178,-850.

The sole issue presently presented at this stage of the case is the meaning of the term "the duration of the war" as used in the lease agreements. Plaintiffs contend that this phrase means the duration of actual hostilities. Defendant asserts that it means a period terminated by formal peace treaty or similar political act, and that the properties were, therefore, returned to plaintiffs long before the termination of the "war" by treaty.

After plaintiffs had completed the presentation of their evidence, defendant moved to dismiss plaintiffs' petition pur-

suant to Rule 49(b) [now Rule 49(c)], Rules of Court of Claims, 28 U.S.C.A. on the ground that upon the facts and the law plaintiffs had shown no right to recover.

The evidence shows that plaintiffs owned three apartment buildings in the City of Manila. February 25, 1945, two days after organized resistance by Japanese troops in Manila had ceased, plaintiffs, who had previously evacuated from their apartments to an area free from combat as the battle for Manila progressed, secured permission from the military authorities to visit the apartment buildings, prior to the date they were rented to defendant. Plaintiffs found that the buildings had been extensively damaged, that looting had occurred, and that U. S. soldiers were occupying the apartments.

In response to an inquiry by plaintiffs, the Army Provost Marshal advised them that it was not possible to post guards on private property, but he suggested that if the apartment buildings were leased to the Army, the Army would post guards to prevent looting and damage. Plaintiffs decided to lease the properties to the Army to protect them from looting, and thereafter offered to lease the buildings to defendant.

On February 27 or 28, 1945, plaintiffs and an agent of defendant inspected one of the buildings, and on March 7, 1945, executed a lease for this building "for the period of the war and six months thereafter," with defendant to pay "as rental the fair present rental value of the property as determined by competent authority." On March 23, 1945, plaintiffs and an agent of defendant inspected the other two buildings and executed leases therefor with these same provisions.

On July 8, 1945, for two of the buildings, and on August 7, 1945, for the third building, plaintiffs and defendant executed leases superseding the earlier ones. These leases, containing specified rentals, were made retroactive to the date of the earlier leases, and extended therefrom "for the duration of the war and six months thereafter," unless sooner terminated by defendant.

These leases were on printed forms supplied by the defendant, the printed portions of which included the phrase "for the duration of the war and six months thereafter." At the time the leases were entered into and executed, neither plaintiffs not defendant's contracting officer or any other agent of defendant discussed the phrase above quoted. Plaintiffs now contend, and testified, that it was their understanding that the phrase referred to actual hostilities and they contend that the evidence taken before the Commissioner tends to establish the truth of that contention. For the reasons hereinafter stated we agree with the position taken by plaintiffs.

Toward the end of the year 1945, after hostilities had ceased, officers billeted in the buildings were notified by defendant to vacate them. Plaintiffs then expected that the buildings when so vacated would be returned to them. However, defendant made further repairs to the buildings and thereafter used them to house officers' families, a use for which the buildings had not been originally leased.

Sometime early in 1946, plaintiffs requested that the buildings be returned to them, insisting that the leases had, by their terms, expired six months after V-J Day. This request, made in March 1946, was denied by defendant. Plaintiffs then made efforts to secure increased rentals from defendant, but without success.

In a letter dated May 11, 1946, after the plaintiffs' request that the apartment buildings be returned to them had been turned down, plaintiffs sought a "renegotiation" of the leases, based "on the announced intention of the Army to continue to occupy them for the officers' families." Plaintiffs were informed that a contract could not be altered to the detriment of the Government, but that vacation of the properties prior to February 1, 1947 was contemplated.

On June 28, 1946, plaintiffs requested cancellation of the leases and that the

apartments be returned to them. On July 31, 1946, defendant then advised plaintiffs that it planned indefinite use of the buildings, and that they could not be released at that time. Further efforts on plaintiffs' part to end the leases or secure higher rentals from defendant, or to have the buildings returned to them by the Army, were also unsuccessful.

On February 17, 1947, plaintiffs served formal notice upon the then Commanding General in the Philippines, the then Chief of the Real Estate Division in the Engineer's Office, and the 64 occupants of the apartment buildings, to cancel the leases, to increase the rental, and either to execute new leases or release the apartments within thirty days thereafter. This failing, an action of unlawful detainer was instituted by plaintiffs against these parties in the Municipal Court of Manila. That court found that the war between the United States and her allies and Germany and Japan had not terminated, that the terms of the leases had not expired, and that the United States, the real party in interest, could *not be sued* in the courts of the Philippines *without its consent*. On appeal, the Court of First Instance of Manila affirmed the decision on the jurisdictional ground, as did the Supreme Court of the Philippines, to which a further appeal was taken by plaintiffs.

On January 12, 1948, plaintiffs were notified that the buildings would be vacated as soon as it was practicable to do so, and formal notices of cancellation were served on plaintiffs, stating that the three buildings would be released on or about February 29, March 31, and May 31, 1948, respectively. The buildings were vacated on or before the specified dates, and the accrued rentals were thereafter paid to and received by plaintiffs, who accepted them under protest.

Defendant contends, in support of its motion to dismiss, that the term "duration of the war" as used in the leases in question meant a period terminated by peace treaty or similar political act, and that to construe the phrase otherwise there must be some manifestation, absent here, that the parties contracted with the intent to give the phrase a different meaning.

Most of the cases relied on by defendant to support this contention have to do with the construction of Federal statutes containing a grant of power to the Government as a Sovereign or to some agency thereof, for the "duration of the war" and six month. In interpreting those statutes the courts have held that the powers so granted continue until six months after the signing of the formal peace treaty or some other equivalent *political* act. These decisions, however, have been held not applicable [1] to cases involving the interpretation of contracts and leases containing similar or identical phrases defining the period for which they were to remain in effect.

When a lease of real estate or a contract contains a provision that the tenancy or performance is to continue "for the duration of the war," "until the conclusion of the war," "until the end of the war," and even "until the final treaty of peace has been signed," the majority of courts have held that in the absence of evidence that a different meaning was assigned to the phrase by both parties, such phrases are to be interpreted as they are commonly understood by laymen, and that such commonly understood meaning is "until actual hostilities have ceased." The practical effect of these decisions has been that in cases involving leases containing such phrase the courts have held that there is a presumption that the parties intended the leases to last only until the cessation of actual hostilities and for whatever additional definite period is provided for in the leases.

In most of the cases which have come to our attention the court has not found the presumption to be successfully rebutted even where one party's evidence tend-

[1.] In some New York cases the courts have held that leases containing the phrase "duration of the war" to define the terms of the lease, meant "until the signing of a formal peace treaty." These New York courts held such leases to be for an indefinite term and therefore to result in a tenancy at will.

ing to establish a contrary intention remained unrefuted. La Jolla Casa De Manana v. Hopkins, 1950, 98 Cal.App.2d 339, 219 P.2d 871, 873. In the La Jolla case, the defendant entered into a contract of sale of her hotel to plaintiff's predecessor, a Mr. White. The contract of sale provided that the seller might continue to occupy a cottage on the hotel property " 'for the "duration" and until she can reasonably build a home for herself.' " It also provided that if the seller was unable to build a house for herself within a year and a half after "the termination of the present war", because of the continuation of building restrictions or because of unreasonable prices, the seller would then pay the buyer rent at the rate of $150 a month. A year and a half after the unconditional surrender of the Japanese on September 2, 1945, the buyer made demand on the seller for possession of the cottage under the terms of the contract of sale. Upon the seller's refusal to vacate, contending that the "war" would not be over until a formal treaty of peace was signed, the owners sought a declaratory judgment that the "war," in the sense used in the contract, meant actual hostilities. The seller and the lawyer who had represented her in negotiating the sale, both testified to the effect that the seller had intended the phrases "for the duration" and "the termination of the present war" to mean "until the signing of a formal peace treaty" and that such intention had been communicated to and understood by the buyer. The original buyer was dead at the time of the declaratory judgment suit and plaintiff was unable to present any evidence to refute that of the defendant. The court held that the ordinary meaning of terms such as "duration of the war" when used in contracts and leases, was the duration of actual hostilities. In the court's opinion, the presumption that the parties had used the phrases in such ordinary sense was not overcome by the testimony to the contrary of the seller and her lawyer. The court concluded that the buyer was entitled to a declaratory judgment favorable to its contention that the phrases concerning the "war" referred to "actual hostilities."

In Rupp Hotel Operating Co. v. Donn, 1947, 158 Fla. 541, 29 So.2d 441, 445, the court held that phrases such as "conclusion of the war", "duration of present world war", and "conclusion of duration" used in contracts and leases, refer to actual hostilities and not to a technical state of war terminated only by a political act such as a formal peace treaty. In Colonial Hotels, Inc., v. Maynard, 1946, 158 Fla. 318, 29 So.2d 28, the court held that a lease to run until "the termination of war" and until "an armistice has been signed between the United States of America and all nations with which it may at such time be at war", would terminate at the end of hostilities marked by the unconditional surrender of the axis powers. The court noted that no armistice had in fact been signed or would be, in view of the unconditional surrender. In Samuels v. United Seamen's Service, Inc., D.C., 68 F.Supp. 461, 462, the lease provided that the term should extend for a period of six months "from and after the cessation of hostilities in the present war with Japan". The subsequent controversy concerned the question whether the phrase "cessation of hostilities" referred to the end of *actual* hostilities, or to the date of a presidential or congressional declaration that hostilities had ended. Such a formal declaration was made on December 31, 1946. The court held that the lease could not be said to terminate until there was a formal governmental determination of the cessation of hostilities. The Circuit Court of Appeals reversed, 9 Cir., 165 F.2d 409, 411, holding that such phrases in leases are to be construed in their ordinary sense and that the ordinary sense of a phrase such as "cessation of hostilities" was the actual cessation of hostilities rather than a presidential proclamation of a fact long since accomplished. The court held also that such cases as Hamilton v. Kentucky Distilleries & Warehouse Co., 251 U.S. 146, 40 S.Ct. 106, 64 L.Ed. 194; and Bowles v. Soverinsky, D.C., 65 F.Supp. 808, hav-

ing to do with the time during which governmental war powers remain in existence, are not apposite to the cases involving the interpretation of leases and contracts.

In Ehrlich v. Barbatsis Holding Co., Fla.1953, 63 So.2d 911, 912, the lease provided that the tenant could have the property during the continuance of the war "now being waged between the United States of America and its Allies against the so-called 'Axis Nations' and for six months after the final treaty of peace has been signed." Later in the same lease it was provided that the lessee would immediately yield up possession of the premises "at the termination of this Lease by termination of the war, or otherwise". No facts or circumstances outside the terminology of the lease were considered by the court, the parties resting upon the express language of the lease. After noting with disapproval the New York decisions holding such leases constitute tenancies at will, the Florida court held that the reference to a "treaty of peace" in the lease under consideration did not mean that the parties intended to contract with reference to a formal peace treaty resulting from international negotiations for the consummation of which neither party could be responsible. Without holding on what precise date the lease had expired, the court held that at the time of the filing of the suit, the lease had clearly expired although at that time no treaty of peace had been signed.

In Girdler Corporation v. Charles Eneu Johnson & Co., D.C., 95 F.Supp. 713, 715, affirmed 3 Cir., 194 F.2d 533, the court was asked to interpret a phrase in a contract providing that the Johnson Co., the nominee of Defense Plant Corporation, might use plaintiff's carbon black process until six months after the date of the "cessation of hostilities". The Johnson Co. contended that the "cessation of hostilities" referred to did not occur until December 31, 1946, the date of the presidential proclamation of the cessation of hostilities. As in the case of Samuels v. United Seamen's Service, supra, the Circuit Court held that in contracts between private parties the phrase in question

and others like it have been held to refer to the end of actual hostilities on September 2, 1945 and that the fact that the United States, through Defense Plant Corporation was a party to this contract made no difference since the courts would not apply a different rule because the Government was a contracting party, citing United States v. Standard Rice Co., Inc., 323 U.S. 106, 65 S.Ct. 145, 89 L.Ed. 104.

In Burger v. Employees' Retirement System, 1951, 101 Cal.App.2d 700, 226 P. 2d 38, 39, the California court was asked to interpret a local statute which provided that during the existing war between the United States and the Axis powers, and for six months after the termination of said war, the provisions of a certain municipal statute would be suspended. The suspended law required that the pensions of retired municipal employees should be reduced by any amounts such employees earned from private employment. The court noted that the wartime act suspending the old law was enacted by vote of the electorate, and the court held that when the voters cast their votes they understood the phrase "during the existing war * * * the termination of said war" in the popular and ordinary sense of the duration of hostilities and the termination of hostilities rather than in the technical sense of the signing of a formal treaty of peace.

In the cases referred to above, the party urging that the phrase such as "duration of the war" meant the duration of actual hostilities, was not required to establish the fact that such meaning had been intended beyond proving the use of those words in the lease or contract. On the other hand, in none of the cases was the court impressed by opinion evidence offered that the phrase was intended to mean that the lease of contract was to continue until a formal treaty of peace was signed. The Circuit Court in the Samuels case, supra, indicated that unless the lease itself provided for termination on the happening of some official political action, the court would presume the parties intended termination of the

agreement upon the termination of actual hostilities. In most of the cases the courts have strongly indicated an unwillingness to believe that parties to an ordinary business transaction, such as leases, etc., would knowingly agree to a term of performance as obviously lengthy and indefinite as one to end with the signing of a formal peace treaty. In deciding that the war ended in the common acceptation of that term upon the termination of actual hostilities for the purpose of interpreting the performance time of leases and contracts, the courts have not been making a determination of when the war ended as a political matter, or in a political sense, but rather when it was reasonable to assume that the period of contract performance had ended.

■ In Grundstein v. Suburban Motor Freight, Inc., 1951, 92 Ohio App. 181, 107 N.E.2d 366, 370, cited by defendant, the tenant, in 1942, had leased certain real estate from the owner for "the duration of the present war and six (6) months thereafter * * *", with an option to purchase at any time during the term of occupancy. In the late summer of 1947, the owner wrote to the tenant requesting him to make some repairs to the premises. On October 27, 1947, the owner conveyed the premises, and executed an assignment of the lease, to the new owner. The tenant thereafter paid rent to the new owner up to January 31, 1950. On December 6, 1949, the new owner served on the tenant a notice to vacate the premises, and on December 27, notified the tenant that the rent on and after February 1, 1950, would be at an increased rate. On January 5, 1950, the tenant notified the landlord that it was exercising its option to purchase. In the subsequent litigation, both parties agreed that the words "duration of the present war" were ambiguous. The landlord contended that the words meant the continuation of hostilities, and that the lease had terminated in 1946; if so, the exercise of the option to buy by the tenant came too late. Under the principle that parol evidence is admissible to show the intention of the parties where there is an ambiguity, evidence was taken from which the court concluded that the trial court was justified in finding that the intention of the parties was that the lease was not to terminate until six months after a formal treaty of peace had been signed. The court further held that where words were susceptible of more than one meaning, that interpretation which the parties themselves had placed upon the words by their subsequent acts would be adopted, indicating, in the application of this principle, that the parties had twice recognized the continuing force and effect of the lease in 1947, long after the termination date claimed by the landlord.

This court had occasion to interpret the meaning of the phrase "duration of the war" in a contract between the United States and Breese Burners, Inc.[2] At issue in that case was the period during which a patent license granted to the Government " 'for the duration of the present war' " and six months thereafter, had been or was in effect. We held that the phrase had the usually accepted and understood meaning of "during the period of actual hostilities" and held that the license expired no later than six months after the Japanese surrender on September 2, 1945.

We are of the opinion that the same rule should be applied to this case involving a lease negotiated by the Army officers of the United States and these plaintiffs. All of the facts and circumstances lead to that conclusion.

■ But defendant contends that at the close of plaintiffs' case before a Commissioner of the court, the evidence offered by plaintiffs failed to establish that plaintiffs intended and understood the phrase " 'duration of the war' " or "period of the war" to mean the duration or period of actual hostilities. As we read the cases dealing with this problem of interpretation, the courts have not required proof of the meaning of such phrases in leases beyond the lease itself, and the burden of showing that the

2. Breese Burners, Inc. v. United States, Ct.Cl., 121 F.Supp. 530, 534.

phrase carried a meaning other than the one the courts have held to be its usual, common and ordinary meaning, has been on the party urging such meaning.

 In the instant case, plaintiffs' failure to prove conclusively by independent outside evidence, other than their testimony as to their understanding, that they intended the lease to terminate six months after the end of actual hostilities with Japan which occurred on September 2, 1945, does not require the dismissal of plaintiffs' petition under Rule 49(c). In addition to what has been said we are of the opinion that the evidence before the court of the conduct of the parties during the period following the Japanese surrender was not consistent with an understanding that the leases were to remain in effect until a formal treaty of peace was signed, unless sooner terminated by defendant.

As the case now stands, plaintiffs are suing on leases which contained the phrase "duration of the war" to define the terms thereof, and in the absence of convincing proof that the parties were speaking of "war" in its political rather than in the sense of actual and open hostilities, the term of the leases ended no later than six months after September 2, 1945, the date of the Japanese surrender to the United States.

The evidence of plaintiffs, although inconclusive as to the specific intention of both parties in using the phrase, does tend to support the conclusion that they were using the phrase in the usual manner of persons entering into a business contract. It is agreed that the parties did not discuss the phrase when the leases were negotiated. Within six months of the surrender of Japan, plaintiffs requested that the buildings be returned to them on the ground that the leases by their terms had expired. What was done by plaintiffs after defendant's refusal to vacate in March 1946, merely represents various methods attempted by plaintiffs to regain possession of their buildings or secure leases from their unwelcome tenant at rentals comparable to the then rental scale after the war had actually ended.

The purpose of Rule 49(c) is to permit, in cases where a plaintiff has been unable to establish a right to recover, a speedy dismissal of the action without necessitating the presentation of defendant's evidence. If, on the other hand, a right to relief is made out by a plaintiff on the record as it stands at the close of plaintiff's evidence, the case must be remanded to a Commissioner to afford defendant an opportunity to establish any defenses available to it. Howard Industries, Inc., v. United States, 115 F.Supp. 481, 126 Ct.Cl. 283.

Plaintiffs' evidence establishes, *prima facie*, that the "duration of the war" as used in the leases with defendant did not extend beyond the time of the formal surrender of Japan on September 2, 1945, and that the leases consequently expired according to their terms not more than six months after that date.

Defendant's motion to dismiss is accordingly overruled and the case is remanded to a Commissioner of this court for further proceedings not inconsistent with this opinion.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and WHITAKER, Judges, concur.