**UNITED STATES of America,**
**Appellant,**

v.

**George W. EDWARDS, Jr., Appellee.**

**No. 18338.**

United States Court of Appeals
Fifth Circuit.

Dec. 19, 1960.

**110**

Elizabeth Dudley, Roger P. Marquis, Attys., Dept. of Justice, Washington, D. C., Perry W. Morton, Asst. Atty. Gen., Paul N. Brown, U. S. Atty., Tyler, Tex., for appellant.

C. A. Brian, Marshall, Tex., Thomas Fletcher, Houston, Tex., Franklin Jones, Sr., Marshall, Tex., Jones, Brian & Jones, Marshall, Tex., of counsel, for appellee.

Before CAMERON and BROWN, Circuit Judges, and HANNAY, District Judge.

HANNAY, District Judge.

This is an action against the United States, the Secretary of Agriculture, and several individuals and corporations, regarding a three-fourths mineral interest in 260.518 acres of land in Harrison County, Texas.

The District Court, after a trial without a jury, ordered the execution of a quitclaim deed to the appellee covering said mineral interest.

In 1936, the United States acquired by purchase the fee simple title to 1,-315.34 acres of land in Harrison County, Texas, in connection with the administration of the Farm Resettlement Program. Before 1950, this program was placed under the administration of the Farmers Home Administration. The lands thus acquired were made part of the Sabine Farms Project, and were divided into small tracts which were given unit numbers. The property here involved consisted of two tracts totaling 260.518 acres, which were designated Units 28 and 29. In 1944, the Government began selling some of the property in the Sabine Farms Project, reserving three-fourths of the oil, gas, coal, and other mineral rights in the land. By mesne conveyances title to Units 28 and 29 vested in appellee on September 16, 1949, the one-fourth mineral interest which was included in the original conveyance from the United States having been leased by his predecessor in title on July 10, 1945, to the Union Producing Company.

On May 1, 1950, the Government leased its three-fourths interest in the minerals in this property to Wilbert G. Crain together with other lands in the area, on a 12½ percent royalty basis. In April 1951, Crain assigned the lease to Union Producing Company. In February, 1955, a well, referred to in the record as the "Adkins" well, was completed as a producing gas well on a tract about 3,700 feet from appellee's property. In March 1955, the drilling of a well was commenced on Units 28 and 29, known as the George Edwards, Jr. No. 1 well, which was completed as a producing gas well about May 1, 1955, and has been operated as a producing gas well ever since.

The "Adkins" well had about four effective feet of sand, and the "Edwards" had about seven and one-half effective feet of sand.

On February 15, 1955, appellee conveyed his one-fourth mineral interest to Lamar Neill, for a consideration at the rate of $50.00 per acre. On February 8, 1955, appellee submitted an application and offer to purchase the reserved

mineral interests on form FHA-990 for $1,465.37. He had been notified in March, 1951, by the Farmers Home Administration that he, as record owner of the surface rights of Units 28 and 29, was entitled to purchase the three-fourths reserved mineral interest under that land at its fair market value. On April 10, 1955, Walter T. McKay, State Director of the Farmers Home Administration, advised appellee, on form FHA-991, that his application to purchase the minerals was accepted but that his offer was rejected, since it had been determined that the fair market value of the reserved mineral interest was $2,930.84. On the same form, McKay further advised appellee:

"If you desire to submit an offer in that amount the same will be acceptable if it reaches this office by May 10, 1955. The subsequent offer, if any, should be made in duplicate on the attached forms through our office at Sabine Farms, in Harrison County, Texas."

On April 25, 1955, appellee completed and executed an instrument in writing on a form furnished by the FHA entitled "Subsequent Offer to Purchase Reserved Mineral Interests in Fair Market Value Areas," under the terms of which appellee agreed to pay the Government $2,930.84 in cash for the reserved mineral interest under Units 28 and 29, and obtained from the First National Bank of Marshall, Texas, a bank draft drawn by that bank on a Dallas, Texas bank and payable to the Treasury of the United States in the amount of $2,930.84. McKay refused to accept both the offer and the draft. Appellee then returned to Marshall, Texas on or about April 25 or April 26, 1955, and tendered his said offer to pay the Government $2,930.84 in cash for said reserved mineral interest, together with the bank draft in the amount of $2,930.84, to one Walter Lee, who was then the Farm Management Supervisor of the FHA Sabine Farms Project in Harrison County, Texas, and in charge of its office at that project. Lee refused to accept the offer

and the draft. Whereupon on April 26, 1955, appellee sent said offer and draft to McKay at his Dallas office by registered mail. Said offer and draft were received by McKay in his Dallas office on April 28, 1955. On May 23, 1955, McKay wrote the appellee a letter in which he returned appellee's said offer and draft and advised appellee that his offer to purchase said reserved minerals for the sum of $2,930.84 had been rejected because the offer of $2,930.84 was not the fair market value.

McKay testified at the trial that the reasons he refused to accept appellee's offer of $2,930.84 was because on or about April 21, 1955, he had read an article in the Dallas News about the Adkins well being a good producer and because payment for the purchase price of reserved mineral rights was not accepted until after the attorney for the FHA had prepared the necessary papers transferring the title to the reserved interest and such papers had been executed.

On April 10, 1955, when McKay advised the appellee that it had been determined that the fair market value of such minerals was the sum of $2,930.84, he had before him a report from the Harrison County FHA Committee and County Supervisor dated February 7, 1955, reporting that in their opinion the value of 100% of the minerals under Units 28 and 29 was the sum of $50.00 per acre and also had before him a report from a firm of consulting geologists employed by the FHA to appraise the fair market value of the mineral estate under Units Nos. 28 and 29 and other units located in the Sabine Farm Project, which report stated that the fair market value as of April 1, 1955, of the minerals located under Units 28 and 29 was the sum of $15.00 per acre. The report of the consulting geologists, among other things, mentioned the fact that Units 28 and 29 were located near the Adkins well which had recently been completed as a gas producer. There is nothing in the record that shows or tends to show that the appellee ever said anything to Mc-

Kay or any other Government representative that influenced McKay in evaluating the reserved mineral interest in question at the sum of $2,930.84. When the appellee was in McKay's office on April 25, 1955, as aforesaid, neither appellee nor McKay mentioned or discussed either the Adkins well or the George Edwards, Jr. No. 1 well. Although a drillstem test with favorable results of which appellee had knowledge had been run on the Edwards well on or about April 21, 1955, there is no showing in the record that McKay had any actual knowledge on April 25, 1955, of the drilling of the Edwards well. However, Lee, the Manager of the FHA Sabine Farms Project had knowledge that the Edwards well was being drilled from on or about the time the drilling of said well commenced. The drilling of the Edwards well having commenced prior to April 1, 1955, said well was in the process of being drilled at the time the consulting geologists made their report to McKay, above referred to.

■ The decisive question to be determined in this appeal is whether or not there was a valid contract entered into by the appellee and the Government whereby the Government became obligated to sell him the three-fourths reserved mineral interest in question. There is no question in this case but that McKay was duly authorized to sell the reserved mineral interest and that he had the authority and duty to determine the fair market value of said mineral interest and that he had the authority to accept the offer for the reserved mineral interest at the fair market value thereof. This McKay apparently did from the three sources above mentioned. With such information in mind, he made the counter-proposal to sell the said mineral interest to appellee for the sum of $2,930.84, which counter-proposal appellee duly accepted in writing on April 25, 1955 and tendered to the Government the sum of $2,930.84. Upon such acceptance and tendering by the appellee there came into existence a valid enforceable contract between appellee and the Government, under the terms of which the Government became obligated to sell the appellee the reserve mineral interest in question for the sum of $2,930.84 and convey same to him by quitclaim deed.

The Government's contention that the Texas Statute of Fraud renders the contract unenforceable is without merit. Article 3995, Title 65, Vernon's Civil Statutes of Texas, Annotated. So, also, is the contention that the word "will" in the above quoted communication from McKay advising the appellee of what would be considered by him a fair market value should be considered as though it was "may." Airline Motor Coaches v. Guidry, Tex.Civ.App., 241 S.W.2d 203–209, (writ of error by Supreme Court of Texas overruled).

■ No different rule should be applied in determining whether or not there was a contract as between the Government and a private individual than would be applied between private individuals. United States v. Standard Rice Co., Inc., 323 U.S. 106, 111, 65 S.Ct. 145, 89 L.Ed. 104.

The Trial Judge was not out of line when he said in his memorandum decision: " * * * It is surprising and to some degree shocking that the Government is contending otherwise."

McKay's counter-proposal to appellee was clear and unconditional and should be enforced. From what has been said, it is plain that the judgment of the trial court was right in ordering that the Government acting through the Secretary or his authorized delegate execute and deliver to appellee a quitclaim deed conveying to appellee all of the Government's title in and to the mineral interest in question upon the appellee paying to the Government the sum of $2,930.84, and adjudging that appellee recover of and from the Government and the Secretary the sum determined to be the amounts of revenue received by the Government from and after April 25, 1955, without interest, from the mineral interest in question, and is hereby

Affirmed.