Kevin Loren COLDEN, Petitioner,

v.

Commander Paul E. ASMUS, U.S.N.,
Respondent.

Civ. No. 70–329–T.

United States District Court,
S. D. California.

Feb. 18, 1971.

Donald B. Burbank, Los Angeles, Cal.,
for petitioner.

Harry D. Steward, U. S. Atty., and
Raymond F. Zvetina, Asst. U. S. Atty.,
San Diego, Cal., for respondent.

## MEMORANDUM OF DECISION

TURRENTINE, District Judge.

This is a military habeas corpus action by a Navy enlisted man who claims to be held in the service under an invalid agreement extending his enlistment. The court has considered briefs and exhibits filed by the parties as well as testimony and oral argument presented at an evidentiary hearing. This memorandum of decision incorporates findings of fact and conclusions of law.

Petitioner attended Wisconsin State College for one and a half years prior to enlisting in the U. S. Navy for four years on October 10, 1966. Shortly after his enlistment and while in recruit training at Great Lakes, Illinois, he applied for the Nuclear Field Program which offered extensive engineering training to qualify operators and technicians for nuclear power plants. In return for this training, applicants were required to sign agreements extending their enlistments for two years. Peti-

tioner executed such an agreement on October 26, 1966. The agreement contains the following language which is the source of this controversy:

"Training (Nuclear Field Program— BUPERS INST 1306.64 Series *or* Selective Electronics Training (SET) Program—BUPERSINST 1510.104 Series) I understand that this extension agreement becomes binding upon completion of IC, EM and MM Class "A" Schools[1] *or* upon enrollment in the ET–A2 Course for ET personnel and thereafter may not be cancelled except as set forth in BUPERS Manual Article C–1407" (emphasis in original)

After completing recruit training, petitioner attended MM Class "A" School for fourteen weeks. He received additional instruction for about one year at the Nuclear Power School and Nuclear Power Plant Prototype Class. Following these studies, petitioner attended a two month course at Submarine School, at the end of which time he volunteered for duty aboard a nuclear submarine. After nine months of service aboard the USS Snook (SSN 592), and at his own request, petitioner was declared environmentally unadaptable and ineligible for further submarine duty. On July 23, 1970, several months after his transfer to a San Diego command, petitioner requested the Chief of Naval Personnel to cancel the two year extension agreement. The Chief of Naval Personnel denied the request on the basis that "he completed all of the training offered, and, therefore, received the benefit of the extension." Administrative remedies have been exhausted.

Petitioner contends that in using the language quoted from the extension agreement the Navy agreed to send him to the IC and EM "A" schools in addition to the MM "A" school; attendance at all three of the specified "A" schools was a condition precedent to petitioner's duty under the contract to serve an additional two years.

■ The threshold issue is the choice of law governing the extension agreement. Petitioner urges the court to apply the substantive law of California, and particularly that state's parol evidence rule, in resolving the case. However, cases involving federal contracts are determined by general contract law unless Congress has fashioned a rule of substantive law or has directed the application of state law. United States v. Standard Rice Co. Inc., 323 U.S. 106, 111, 65 S.Ct. 145, 89 L.Ed. 104 (1944); Priebe and Sons v. United States, 332 U.S. 407, 411, 68 S.Ct. 123, 92 L.Ed. 32 (1947). See Wright, Federal Courts (2nd ed.) § 60. See generally, *id* § 60. Perhaps there is no federal contract which more requires the uniform interpretation afforded by federal law standards than an enlistment contract. In recent years, a man enlisting in the Navy could expect to serve in such places as the "brown water Navy" in Vietnam, a recruiting station in Seattle or on the high seas. In the case of United States v. Standard Oil Company, 332 U.S. 301, 305–311, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947), the plaintiff United States sought to recover for the costs of hospitalization, pay and loss of services of an injured soldier from the tort-feasors prior to enactment of the Medical Care Recovery Act. The court held that the relationship of soldier and government required application of federal law and not the law of the state where the injury occurred. It was also held that the government had no right to recover for the loss of services of a soldier in the absence of legislation by Congress

---

[1]. IC (Interior Communications), EM (Electrician's Mate) and MM (Machinist's Mate) are three Navy ratings, or occupational specialties. An enlisted man is integrated into a rating when he has received basic technical training, usually at an "A" school established for each specialty. It is impossible to serve in more than one rating, and promotion is accomplished within the structure of the occupational specialty. Petitioner has advanced within his specialty to pay grade E–5, or Machinist's Mate Second Class.

protecting the military relationship in that manner. The choice of law analysis turned on the predominantly national character of military service:

"Perhaps no relation between the Government and a citizen is more distinctively federal in character than that between it and members of its armed forces. To whatever extent state law may apply to govern the relations between soldiers or others in the armed forces and persons outside them or nonfederal governmental agencies, the scope, nature, legal incidents and consequences of the relation between persons in service and the Government are fundamentally derived from federal sources and governed by federal authority."

*Id.* at 305–306, 67 S.Ct. at 1607.

■ Absent some special reason to apply state law, the appropriate rule of law should not be determined by the state of enlistment or the state where a serviceman happens to be serving when an action is brought on the contract.[2] Accordingly, the court will look to general principles of contract law, including the law of federal contracts as interpreted in federal court decisions.

■ Petitioner urges that the extension contract, including the quoted clause, is an integrated agreement, and that its plain language, "IC, EM and MM class 'A' schools," requires that all three schools be completed before the Navy could hold petitioner to serve his extension. Thus, the parol evidence rules bar evidence extrinsic to the contract which would vary its terms. However, the language of the contract referring to Bureau of Personnel Instruction 1306.64 (hereinafter "BUPERS INST. 1306.64" or "instruction") seems intended to incorporate the instruction by reference, and the parties have stipulated that the instruction is incorporated into the agreement and becomes a part thereof. Where a contract incorporates by

reference the contents of another writing, the two documents constitute one agreement and should be read together. American Federation of Labor v. Western Union Telegraph Co., 179 F.2d 535 (6th Cir. 1950).

■ Bupers Inst. 1306.64 describes in detail the training cycle for the Nuclear Field Program. It clearly prescribes attendance at only one class "A" school as a prerequisite for additional training in the program. There are no less than eleven references to class "A" school in the singular. For example, paragraph 4g, in speaking of the program requirements, provides:

"Meet the school selection criteria for *one* of the following class 'A' Schools: ET, IC, EM and MM." (Emphasis supplied.)

Nowhere in the instruction is it even remotely suggested that Nuclear Field participants would attend more than one class "A" school. The instruction itself prescribes, in paragraph 9, the form language to be used in the extension agreement. It is unreasonable to conclude that the drafter of the instruction would have placed language in the enlistment contract totally at odds with the carefully planned course of studies explained in the instruction. To arrive at the meaning petitioner proposes is to ignore the principle that the intention of the parties to a contract must be determined from a reading of the contract as a whole. See General Casualty Co. of America v. Azteca Films, Inc., 278 F.2d 161, 167–168 (9th Cir. 1960), cert. denied 364 U.S. 863, 81 S.Ct. 103, 5 L.Ed. 2d 85 (1960).

■ It appears that the form language in question was employed to place all participants in the program on notice that an extension was required. The effective date of the extension differed, however, depending on whether the class "A" school chosen was the ET–A2 school, in which case enrollment in the

2. The states having the most significant contacts with the contract are Illinois, where the document was executed, and California, where petitioner was stationed at the time the period of extension commenced.

course made the extension effective, or the IC, EM or MM school, in which case completion of the school was a prerequisite to an effective extension. Thus the grouping of the three schools (IC, EM, MM) was designed to reflect this time factor and did not indicate that completion of all three schools was required. Any other construction would produce a result totally inconsistent with the agreement contemplated by the parties. Petitioner knew, or should have known, that upon completion of the MM Class "A" school, he was obligated to serve an additional two years.[3]

Let judgment be entered accordingly.

3. To the extent that the subjective question involving petitioner's state of mind is relevant, it is noted that petitioner made no complaint to the Navy until July, 1970, about three months before his extension would commence. If as a recruit petitioner didn't understand the improbability of his being assigned to more than one "A" school, it was surely apparent to him long before July of 1970 that there were no plans to send him to the IC and EM class "A" schools. This is hardly the conduct of a man betrayed. Cf. Rudd-Melikian, Inc. v. Merritt, 282 F.2d 924, 928–929 (6th Cir. 1960).