**Francis T. WEST, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Defendant and Third–Party Plaintiff,**

v.

**REAL PROPERTIES MLP LIMITED PARTNERSHIP and Lincoln National Life Insurance Company, Third–Party Defendants.**

**Civ. A. No. 4:94cv51.**

United States District Court, E.D. Virginia, Newport News Division.

April 10, 1995.

William Francis Stone, Jr., William F. Stone, Jr., Attorney at Law, P.C., Martinsville, VA, for Francis T. West.

Anita Kay Henry, United States Attorney's Office, Norfolk, VA, for United States Postal Service.

Hugh McCoy Fain, III, Spotts, Smith, Fain & Rawls, Richmond, VA, for Real Properties MLP, Ltd.

Raymond Lee Hogge, Jr., Williams, Kelly & Greer, P.C., Norfolk, VA, for The Lincoln National Life Insurance Company.

### *OPINION AND ORDER*

KELLAM, District Judge.

In the opinion and order of December 6, 1994, the Court requested counsel to deal with whether the notice given Lessor of the need and necessity for repairs to the heating and air conditioning in the leased premises meets the requirements of the lease between the parties. The lease in this case called for notice to Lessor of any need for repairs and a 30 day period to commence them. Copy of that notice was to be given to the Mortgagee. If Lessor did not commence the repairs and the government wished to cancel the lease because of such a default, or if it desired to make the repairs and deduct the cost thereof from the rent, it was required to give Mortgagee written notice of Lessor's failure to commence the repairs and allow Mortgagee 30 days to commence the work or to determine whether it would make the repairs. As is hereafter shown, the government made the request of Lessor to repair the heating and air conditioning. A copy of that notice was sent to Mortgagee as required by the lease. Lessor did not take action to make the repairs. Without further notice to Mortgagee, as required by the lease, government undertook to make the repairs and thereafter called upon Lessor to reimburse it for the costs. When Lessor failed to do so, government commenced making deductions from the monthly rents then payable to Mortgagee.

The issue is whether the government (Postal Service) complied with the terms of the lease as set out in paragraph 10.

### I.

 The contract between the parties is unambiguous. The "United States as a contractor must be treated as other contractors under analogous situations." *United States v. Standard Rice Co., Inc.*, 323 U.S. 106, 111, 65 S.Ct. 145, 147, 89 L.Ed. 104 (1944). "A government contract should be interpreted as are contracts between individuals with a view to ascertain the intention of the parties and give it effect accordingly, if that can be done consistent with the terms of the instrument." *Hollerbach v. United States*, 233 U.S. 165, 171–172, 34 S.Ct. 553, 555, 58 L.Ed. 898 (1914). "When problems of the interpretations of its contracts arise the law of contracts governs." *Standard Rice*, 323 U.S. at 111, 65 S.Ct. at 147. Continuing there, the court said it would "treat it [United States] like any other contractor and not revise the contract which it draws on the ground that a more prudent one might have been made." *Id.* *See also United States v. American Surety Co.*, 322 U.S. 96, 64 S.Ct. 866, 88 L.Ed. 1158 (1944).

 It is customary, where Congress has not adopted a different standard, to apply to the construction of government contracts the principles of general contract law. *Priebe & Sons, Inc. v. United States*, 332 U.S. 407, 411, 68 S.Ct. 123, 125–126, 92 L.Ed. 32 (1947). *See also Standard Rice*, 323 U.S. at 106, 111, 65 S.Ct. 145, 147.

 "Suits to enforce contracts with federal agencies are governed by federal common law." *Western Securities Company v. Derwinski*, 937 F.2d 1276, 1280 (7th Cir.1991). *See Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573; *Price v. Pierce*, 823 F.2d 1114, 1119–1120 (7th Cir.1987); *Falls Riverway Realty, Inc. v. City of Niagara Falls*, 754 F.2d 49, 55 n. 4 (2nd Cir.1985); *Lawrence v. United States*, 378 F.2d 452, 461 (5th Cir.1967).

In *Forman v. United States*, 767 F.2d 875, 879–880 (Fed.Cir.1985), the court applied federal law to the interpretation of a lease between the Postal Service and the lessor, saying "[F]ederal law, rather than the law of the individual states, seems appropriate at least for that kind of a specialized lease." Too, in *Falls Riverway Realty v. City of Niagara Falls*, 754 F.2d 49, 55 (2nd Cir.1985), in footnote 4, the court said "[W]e note that contracts with the government are governed by federal common law." *citing Priebe & Sons, supra.*

It seems from the above citations that federal common law will govern the interpretation and construction of the contract. However, as pointed out in the Court's opinion and order of December 6, 1994, it appears that federal common law and the law of Virginia on the construction and interpretation of contracts is about the same.

### II.

The applicable provisions of the lease are set out in the opinion of the Court of December 6th, 1994, filed December 8th, 1994, and will not be restated in detail here (See page 7, Article III, 1994 opinion). As there stated, the Lessor was required to maintain the building, equipment and fixtures in good repair. If repairs were needed, Lessor was required to make them to the satisfaction of the government. Failure so to do gave the government the right to cancel the lease, or itself make the repairs. However, before attempting to cancel the lease or make the repairs with the right to reimburse itself out of the accruing rents, the government was first required to give Lessor written notice of the need of the repairs, with copy to Mortgagee, and allow Lessor 30 days to commence the repairs. If Lessor failed to take action within said time, before government could cancel the lease or itself undertake to make the repairs with the idea of deducting the costs from the rents, it was required to give Mortgagee a written notice of its intention to cancel the lease or itself make the repairs and deduct the costs thereof from the rents and allow Mortgagee an additional 30 days opportunity to commence the repairs.

The lease further provided that if the government becomes dissatisfied with Lessor's progress in making repairs, or any condition occurs which would give the government the

right to cancel the lease or to incur a cost for which it could obtain reimbursement pursuant thereto, the government will not have said right or rights unless and until written notice thereof is first given to the assignee of money due or to become due hereunder and the mortgagee of any mortgage on the premises—and the government shall have afforded such assignee and mortgagee not less than 30 days opportunity, in addition to the aforesaid mentioned time allotted to lessor, to commence ... necessary repairs (Underscoring added) (Provisions of Lease, par. 10(a)). Paragraph 10(e) authorizes the government to make the repairs if Lessor or mortgagee fail to do so, and deduct the costs from the rent. Paragraph 10(d) provides that if and when the government gives a notice to Lessor under paragraph 10, to send a copy thereof to any mortgagee and assignee of rents hereinabove referred to. The lease in paragraph 11 gives the government the right to make repairs in the event the Lessor fails to do so when the Lessee requires Lessor to do so, and to make repairs for the account of the Lessor and obtain reimbursement from Lessor for the costs thereof.

As shown in Article V of the 1994 opinion, on October 23, 1991, Postal Service wrote RRP to remind it that since a proposed sale of the premises to Postal Service had fallen through, repairs were needed to the premises and that if those repairs were not corrected by Lessor, Postal Service would complete the repairs and deduct the costs from the rents. RRP was requested to advise Postal Service of its intent to complete the repairs by November 8, 1991. Copy of this letter was sent to Lincoln/West, as was required by the lease, but no further notice was given Lincoln/West of any response from RRP, or of Lessor's refusal to make the repairs. Nor was the 30 day written notice given Lincoln/West of any failure of Lessor to make the repairs, or a call made upon Mortgagee to make the repairs or an opportunity for Lincoln/West to make the repairs. The next correspondence was a letter from Postal Service to RRP dated November 27, 1992 advising the heating and air conditioning repairs had been completed. A copy of the October 21, 1991 letter was attached. The November letter requested Lessor to reimburse Postal Service for the costs of $101,000.00 by December 31, 1992; otherwise, deductions would be made from the rent. Copy of that letter was sent to Lincoln/West. (See Exhibits P–22 and P–23). Under date of August 11, 1994, Postal Service notified RRP that beginning August 1, 1994, it would begin monthly deductions from the rent to reimburse it for the $101,000.00 costs for the heating and air conditioning plus $32,512.00 for interest (See Ex. P–29).

The evidence is clear that Postal Service did not give Lincoln/West any separate 30 day notice of Lessor's failure to make the requested repairs as required by the lease, and then allow Lincoln/West a period of 30 days to deal with the issue or make the repairs. The only notice to Lincoln/West was a copy of the 30 day notice given by Postal Service to Lessor requesting the repairs. Postal service attempts to escape this requirement asserting that it sent Lincoln/West a copy of its notice to Lessor which substantially meets the requirements of the lease. The issue is whether Postal service has complied with the terms of the lease to permit it to deduct the costs of the repairs from the rents.

Lincoln/West assert that the language of the lease is clear and controlling; that under its terms Postal Service was required to give a 30 day written notice to Lessor with copy to Lincoln/West; that if Lessor failed or refused to perform, to thereafter give a 30 day written notice to Lincoln/West to enable it to deal with the issue as it might desire; that the language of the lease, i.e., "if any condition or conditions occur which would otherwise give the government the right to cancel this lease or to incur a cost for which it could obtain reimbursement pursuant thereto, the government will not have said rights unless and until written notice thereof is first given to the assignee of the moneys due or to become due hereunder ... and the government shall have afforded such assignee and mortgagee not less than 30 days' opportunity in addition to the aforesaid mentioned time allotted to the Lessor...." (Underscoring added) (Par 10(a) of lease, p. 7 opinion of 1994).

On the other hand, Postal Service asserts that Lincoln/West had constructive notice of the need and requirement for repairs and is therefore bound by the notice.

Under the terms of the lease, if repairs to the leased premises were needed, Postal Service was to give 30 days written notice to Lessor and permit Lessor to make the repairs. If it failed to make the repairs, before Postal Service could cancel the lease or make the repairs and deduct the cost from the rent, it was required to give a second 30 days notice to Lincoln/West before it attempted to make the repairs. However, under the lease if Postal Service gave the notice to Lessor and Lessor failed to act, Postal Service could proceed with the repairs and recover the cost from Lessor without attempting to make any deductions from the rent or in anyway interfering with any assignment of rents to the mortgagee. The notice to mortgagee would only come into play if after the written notice to Lessor, Lessor failed to act and Postal Service intended to cancel the lease or make the repairs and deduct the costs from the rents. The language of the lease makes this clear where in paragraph 10(a) giving Postal Service the right to cancel the lease, it says no cancellation action will be taken "unless and until written notice is given Lessor ... and the Lessor has failed to start the correction ... within 30 days after receipt of the written notice ... and ... if the government shall have become dissatisfied with the Lessor's progress ... or if any condition or conditions occur which would otherwise give the government the right to cancel this lease or to incur a cost for which it could obtain reimbursement ... the government will not have said right or rights unless and until written notice thereof is first given the assignee of moneys ... and the government shall have afforded such assignee ... not less than 30 days opportunity, in addition to the ... time allotted to the Lessor to commence ... repairs." (Par. 10(a) of lease).

"Unless and Until" is a condition precedent. Postal service could not cancel the lease, or make the repairs and charge the costs against rents unless and until it gave the required notice. It could make the repairs and have a cause of action against the Lessor for the costs and subject Lessor's equity in the property to payment therefor. "Unless" means "except." *State Wholesale Grocers v. Great Atlantic & Pacific Tea Co.*, 258 F.2d 831, 838 (7th Cir.1958). "Unless" means except on the condition that; under any other circumstances than that; except on the condition that." WEBSTER'S THIRD INTERNATIONAL DICTIONARY. The same dictionary defines "unless" except "on the condition that; under any other circumstances than that; except on the condition that."

In *Pruitt v. Great American Insurance Company*, 86 S.E.2d 401, 405, 241 N.C. 725 (1955), the Supreme Court of North Carolina in dealing with "Until" and "Unless", as used in an insurance policy, said:

Where a provision in a policy of insurance provides that it shall not be valid *until* countersigned by the company's agent, there is authority to the effect that this is a condition precedent to the validity of the policy. *Burner v. American Ins. Co.*, 221 Mo.App. 1193, 300 S.W. 556; *National Union Fire Ins. Co. v. California Cotton Credit Corp.*, 9 Cir.1935, 76 F.2d 279, WEBSTER'S NEW COLLEGIATE DICTIONARY, the latest edition of the Merriam–Webster series of dictionaries, defines Until as "up to the time that or when." the same authority defines Unless thus, "if not; supposing that not; except that." According to Webster's definitions, Until refers to time; Unless does not. AMERICAN JURISPRUDENCE discusses the meaning of the word Until in Vol. 52, Article Time, Sec. 25. See also: Annotation 16 A.L.R. 1090.

In *Driver v. United States*, 232 F.2d 418, 421 (4th Cir.1956), the court said that "[U]ntil is a word defined by the Standard Dictionary as meaning 'to the time when.' WEBSTER'S INTERNATIONAL DICTIONARY gives the meaning of 'until' as 'up to'; till—used in reference to time; as to remain *until* the end of the month."

It was an express condition of the lease that "unless" and "until" the notice was first given to Lessor and upon its failure to act, a written notice was specifically given to mortgagee with an additional 30 day period to act, Postal Service was not authorized to cancel the lease or charge any repairs against the

rents which had been assigned to Lincoln/West.

### III.

Though the contract is governed by federal common law, the Court's attention has not been directed to any material difference between the federal common law and the law of Virginia on the legal issues here involved. The contract required the government to give notice to Mortgagee if it determined to cancel the lease or to make repairs and deduct the costs thereof from the rents which had been assigned to Mortgagee. It was a notice in addition to the notice required to be given Lessor, and specifically provided that Mortgagee be afforded not less than 30 days opportunity, in addition to the 30 days allowed the landlord, to commence the repairs. The government was not entitled to make the repairs and deduct the costs from accruing rents "unless" and "until" it gave the notice to Mortgagee, and an opportunity to correct the default. As the court said in *Business Bank v. F.W. Woolworth Company*, 244 Va. 333, 421 S.E.2d 425, 427 (1992), the "letter, informing Green that the Bank was 'proceeding to replace the [air conditioning] units' did not give the lessor the opportunity to repair, replace or 'to somehow do something that would still fulfill its [his] obligation under article 10 [of the lease],' which may have been something other than replacing the entire air conditioning system."

Numerous cases have come before the courts where a contractor has been denied recovery for additional work under a contract because of failure to give the required notice of the costs before the work was done. In such cases the courts have generally held that giving the notice requires strict compliance and giving of the notice is a condition precedent. *See McDevitt & Street Company v. Marriott Corporation*, 713 F.Supp. 906 (E.D.Va.1989); *United States v. Centex Construction Co., Inc.*, 638 F.Supp. 411 (W.D.Va. 1985); *Service Steel Erectors Co. v. SCE, Inc.*, 573 F.Supp. 177 (W.D.Va.1983); *Lord v. State Farm Insurance Corp.*, 224 Va. 283, 284, 295 S.E.2d 796 (1982); *Liberty Mutual Insurance v. Safeco, Inc.*, 223 Va. 317, 288 S.E.2d 469 (1982).

Postal Service relies upon *Little Beaver Enterprises v. Humphreys Railways*, 719 F.2d 75 (4th Cir.1983) and similar cases. However, the facts of those cases are entirely different from the facts of this case. In many of them, the court found the party had waived the requirement of the giving of notice in the specific manner or in writing had been waived.

█ Postal Service breached the contract by failing to give plaintiff the required notice and is therefore not entitled to offset the costs of repairing the heating and air conditioning against any rent due to the Mortgagee, but only against any rents due the landlord.

### IV.

This is an action for declaratory judgment in which plaintiff seeks to have the Court declare his rights under the lease. In the order of December 6, 1994, the Court determined the right of plaintiff to certain rents being deducted by Postal Service for repairs to the roof. Here, it determined plaintiff's right to certain funds deducted for repairs to the heating and air conditioning.

It would seem that under 28 U.S.C. § 2202 and 39 U.S.C. § 409, whatever relief plaintiff may be entitled to can be determined in this action. Counsel are requested to confer and attempt to agree on such relief and to submit an order on judgment.